Doyle Franklin **EARLS**

v.

**STATE OF TENNESSEE.**

**Civ. No. 3–74–114.**

United States District Court, E. D. Tennessee, N. D.

May 22, 1974.

---

Doyle Franklin Earls, pro se.
Bart Durham,. Asst. Atty. Gen., Nashville, Tenn., for defendant.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

■ Doyle Franklin Earls, a state prisoner, has filed this application for habeas corpus relief pursuant to Title 28 U.S.C. § 2241 et seq., contesting the constitutionality of a search of his residence in the afternoon of August 13, .1969. Respondent contends that the petition should be denied on the grounds that (1) petitioner has failed to exhaust available state post-conviction remedies under T.C.A. § 40–3801 et seq.; (2) the search warrant in issue was valid; and (3) that even if the warrant was invalid, petitioner gave his consent to the search. In support of its contentions, respondent has filed with the Court the entire record, including the transcript of the trial and suppression hearing, the briefs of counsel on appeal, the opinions of the Tennessee Court of Criminal Appeals reversing the trial court, and the opinions of the Supreme Court of Tennessee reversing the Court of Criminal Appeals and sustaining the search. In light of this record, we conclude that petitioner has exhausted his state remedies as to the issue presented in this action. We are further of the opinion that since the Supreme Court of Tennessee held the warrant to be invalid under Aquilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and other related cases, that issue need not be relitigated in this action. The controlling issue is whether petitioner consented to the search of his residence by some six officers, which search uncovered evidence that was used against petitioner at his trial for the murder of one Richard Lynn Barger.

The record, which contains some nineteen exhibits, reflects that petitioner was tried and convicted of the second degree murder of Richard Lynn Barger, a seventeen year old boy. The trial testimony of Sheriff Russell of Loudon

County, Tennessee [1] reflects that he first contacted petitioner on August 12, 1969 while making the investigation. Sheriff Russell requested petitioner to come to the police station at Sweetwater, Tennessee, which petitioner voluntarily did. Sheriff Russell stated that petitioner was given his *Miranda* warnings at the station, by other officers in the Sheriff's presence.

The Sheriff's next contact with Earls was on the following day when he and some five other state officers went to petitioner's residence to execute a search warrant. The warrant was obtained for the purpose of searching petitioner's premises for "one (1) leather billfold and money in the amount of $140.00 and two (2) payroll checks in the amount of $52.00" which had allegedly been stolen from the victim and which were believed to be in petitioner's possession.[2]

Upon reaching the premises that afternoon, the Sheriff stated that he drove to the back of the house, and that, when petitioner came out, he was advised that the officers had a search warrant. The Sheriff then proceeded to read the warrant to petitioner after giving him a copy.

The Sheriff then testified as follows:

"Q   What did Mr. Earls say, if anything?

"A   While I was reading the warrant, he says 'You needn't to have brought a search warrant.' He threw his copy down. And he said, 'You Gentlemen are welcome to search anywhere on my premises you want to search and take anything you find.' That was what he told us." Tr. pp. 24–25

Thereupon, defense counsel objected and the matter was further developed out of the presence of the jury. During questioning, the Sheriff stated that even though Earls gave him permission to make a search, he was going to search the premises in any event under the warrant issued by the General Sessions judge. He did state, however, as follows:

"Q   And you made the search on the basis of this warrant didn't you, Freeman?

"A   On the basis of that warrant and his permission." Tr. p. 30

The testimony of the Sheriff regarding the statements made by petitioner were corroborated by the other officers present when the search occurred. Petitioner did not testify on this matter.

---

1. The pertinent portions of this testimony are found in the Transcript (Tr.) at pp. 20–54 and contains the transcript of the hearing held pursuant to defendant's motion to suppress.

2. "THE SEARCH WARRANT
   "The affidavit for the warrant says:
   " 'I, FREEMAN RUSSELL, make oath that I am Sheriff duly elected, appointed and qualified as such in said State and County; that on the 13th day of August, 1969, I received information from confidential formant (sic) a responsible and reliable citizen of said State and County, whose name I have this day disclosed to the Judge to whom this application is made, that there was stolen from Lynn Barger on the 9th day of August, 1969 the following described personal property, the same being the personal property of Lynn Barger and of the value of $202.00 and particularly described as follows: one (1) leather billfold and money in the amount of $150.00 and two (2) payroll checks in the

amount of $52.00, that Doyle Frank Earls, Alias, who resides in or occupies and is in possession of the following described premises, viz: the following described premises, to-wit, situated in district No. 5 of Loudon Co., State of Tennessee, it being that tract or parcel of land known as the Watt Johnson farm, bounded as follows, North by B. F. Parker, East by T. L. Monteith, South by E. M. Galyon, West by A. J. Parker, containing 100 acres more or less, located in old 5th (now 4th) District, Loudon County, Tennessee, now has in his possession in the building hereinbefore described on said premises the aforesaid property hereinabove described, which the said Doyle Frank Earls is unlawfully keeping in his possession and under his control in violation of law as made and provided in such cases.' "
   The Court, is, for the purpose of this case, assuming that the warrant was invalid since the issue has been decided in petitioner's favor by the Supreme Court of Tennessee.

The transcript of petitioner's testimony[3] shows that he was forty-nine years old at the time of his trial. It further shows that he had attended a junior college in Mississippi on a football scholarship and had served some ten years in the armed services during World War II and the Korean Conflict. He returned home in 1953 or 1954 and drew a service connected disability pension. On cross-examination, petitioner further testified that he had attended the University of Tennessee and had some eight years of college education, taking into account interruptions during wartime.

■ The argument presented to this Court by the application for relief is, in the main, that the consent given the officers to search petitioner's premises was coerced and therefore invalid. Specifically, the application, drafted some five years after the search by petitioner's jailhouse lawyer states:

"That it is Plaintiff's contention that the instant that he was confronted on his property by at least six (6) officers who extended to him an invalid search warrant, that he was as much under arrest as a person can become, that he had no choice whatever but to consent to the search or run from a machine gun. Nothing less would have prevented six police from searching his home . . ." Complaint, at p. 4

Relying primarily upon Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1965) and Hoover v. Beto, 439 F.2d 913 (5th Cir. 1971) (Hoover I), the Tennessee Court of Criminal Appeals held that there was no voluntary consent given for the search and, therefore, it was invalid. On petition for certiorari, the Supreme Court of Tennessee affirmed the intermediate appellate court, again relying primarily on *Hoover I*, supra. However, in light of the en banc decision in Hoover v. Beto, 467 F.2d 516 (5th Cir. 1972), re-

versing the three-judge panel, the Supreme Court considered the State's petition for rehearing and held that under the circumstances presented in the record, petitioner's consent was voluntary. (Earls v. State, supra).

We are not unmindful of the recent decision of this Circuit in Ray v. Rose, 491 F.2d 285 (6th Cir. 1974), which held that the petitioner in that case was entitled to an evidentiary hearing on the question of whether his plea of guilty was voluntary. That case, however, is distinguishable from the one here under consideration. We do not deal here with questionable tactics on the part of defense counsel which could in turn influence a defendant's choice regarding his plea. To the contrary, petitioner was represented at his trial by the most able of Tennessee criminal trial attorneys. Furthermore, the Court has before it the entire record of proceedings which have heretofore been held and which clearly reflect the events that are the basis of the issues presented in this action. Accordingly, we are of the opinion that nothing further could be added by an evidentiary hearing.

In *Bumper*, supra, the Supreme Court, per Mr. Justice Stewart, stated:

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. *This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.* A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid.

\* \* \* \* \* \*

"When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably

---

3. Defendant's evidence appears in the Transcript beginning at p. 358.

580

lawful coercion. Where there is coercion there cannot be consent." (Emphasis added) 391 U.S. at 548–550, 88 S.Ct. at 1792.

The purported consent in *Bumper* was obtained from a sixty-six year old Negro woman who lived in a rural area of North Carolina, and who was confronted by four white law enforcement officers. Additionally, the officers stated they had a warrant, but did not read it to the woman. In essence, she did no more than acquiesce to their claim of lawful authority to search the premises.

The case under consideration markedly differs from *Bumper*. Here we have a forty-nine year old male who had at least some college education and who had served in two wars. On the previous day he had voluntarily cooperated with the law enforcement officials and had been fully advised of his *Miranda* rights at the station house interview. When read the warrant, he threw his copy on the ground and stated to the effect that such was not necessary. He further stated, "You Gentlemen are welcome to search anywhere on my premises you want to search and take anything you find!"

Factors that tend to establish an involuntary consent include: (1) the presence of some five or six law enforcement officers; (2) the absence of any warning to petitioner that he had a right to refuse consent to a search; and (3) the trial statement by Sheriff Russell that the search would have been carried out in any event pursuant to the warrant notwithstanding petitioner's consent.

 In light of Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), we are of the opinion that officers need not warn a defendant of his right to refuse consent to a search in order to conduct a search pursuant to such consent. It is the intent of the person giving the consent, and not the intention of those conducting the search that controls. As to the presence of the five or six officers who were assisting in the execution of the warrant, this factor alone, and taken into consideration along with the totality of the circumstances at the time the search occurred is not sufficient to vitiate an otherwise voluntary consent.

Upon consideration of the entire record, we are constrained to conclude that petitioner, on August 13, 1969, not only acquiesced in, but further voluntarily consented to a general search of his premises. Hoover v. Beto, 467 F.2d 516 (5th Cir. 1972). Accordingly, petitioner's application for habeas corpus relief on the ground that the consent search in absence of a valid warrant was unlawful must be denied. See, Schneckloth v. Bustamonte, supra; Bumper v. North Carolina, supra; Hoover v. Beto, supra, reversing 439 F.2d 913 (5th Cir. 1971). Compare, United States v. Hearn, 496 F.2d 236 (6th Cir. 1972); United States v. Cogwell, 486 F.2d 823 (7th Cir. 1973); United States v. Luton, 486 F.2d 1021 (5th Cir. 1973); Holloway v. Wolff, 482 F.2d 110 (8th Cir. 1973).