EL PUEBLO DE PUERTO RICO, recurrido, *v.* MARÍA SANTIAGO ALICEA, acusada y peticionaria.

*Número:* CE-93-243          *Resuelto:* 18 de abril de 1995

*Antonio Miguel Sagardía*, abogado de la peticionaria; *Carlos Lugo Fiol, Subprocurador General*, y *Aida Ileana Oquendo Graulau, Procuradora General Auxiliar.*

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

María Santiago Alicea recurre de una resolución dictada por el Tribunal Superior que declaró sin lugar una moción de supresión de evidencia porque la peticionaria consintió voluntariamente al registro sin orden efectuado en su residencia. Por entender que su consentimiento no fue voluntario, revocamos.

## I

La prueba presentada por el Ministerio Público y por la defensa constó de las declaraciones del Sargento Aníbal Rodríguez y de la Sra. María Rivera Ramírez.

Según surge del testimonio del sargento Rodríguez, éste se encontraba en horas de la tarde investigando el asesinato de tres (3) personas en el Residencial Vista Hermosa en Río Piedras cuando le informaron sobre una confidencia recibida en el Cuartel de Puerto Nuevo de que las armas

utilizadas en esas fechorías se encontraban en el edificio Núm. 64, apartamento 755 de dicho residencial.

Enterados de esta información, el Sargento y agentes de la Unidad de Operaciones Tácticas, desplegando sus armas, rodearon el apartamento. El Sargento llamó hacia el interior de éste y una menor, hija de María Santiago Alicea, le contestó que su madre se encontraba en la esquina del edificio conversando con unos vecinos. En ese momento llegó Santiago Alicea y el Sargento le pidió permiso para registrar su apartamento. Ésta se opuso y le exigió una orden de allanamiento. El oficial policiaco le expresó que no la tenía y ante la negativa de ella a dejarlo entrar, el Sargento se lo informó al Fiscal a cargo del operativo.

El Fiscal solicitó hablar con Santiago Alicea y el Sargento la llevó hacia donde él se encontraba. Luego de conversar con él, Santiago Alicea accedió a que registraran su apartamento. Como resultado del registro los policías encontraron tres (3) armas de fuego y arrestaron a Santiago Alicea y a su hija.

En el contrainterrogatorio, el sargento Rodríguez testificó que la confidencia no fue recibida por él y que no tenía información sobre la persona que la ofreció. Declaró, además, que no existía documento por escrito en la Policía que demostrase la existencia de dicha confidencia y que el policía que le informó sobre ella no fue quien la recibió. El sargento Rodríguez aceptó que tanto él como el Fiscal le dijeron a Santiago Alicea que si no consentía al registro la Policía se encargaría de conseguir una orden de allanamiento ese mismo día. Además, el Sargento aceptó que la única prueba que tenía para sospechar que en ese apartamento había armas de fuego fue la confidencia recibida en el Cuartel.[1]

Por otro lado, la Sra. María Rivera Ramírez, una resi-

---

[1] El Sargento Aníbal Rodríguez manifestó que en el apartamento registrado, además de la peticionaria y su hija menor de edad, residían tres (3) hijos mayores de edad. Las armas no fueron encontradas en la habitación de la peticionaria.

dente del mismo residencial, testificó que el día de los hechos se encontraba en su apartamento en horas de la tarde. Al llegar la Policía a investigar los asesinatos, ella bajó de su apartamento y se sentó a dialogar con Santiago Alicea y otras personas del residencial. De momento observó que la Policía estaba tratando de abrir una ventana del apartamento donde residía Santiago Alicea. Al ver esta acción, ella se dirigió hacia dicho apartamento y encontró a Santiago Alicea preguntándole al sargento Rodríguez por qué estaban tratando de abrir la ventana de su apartamento. Este le informó sobre la confidencia que habían recibido.

En su testimonio ella declaró que el Sargento le indicó a Santiago Alicea que si los dejaba entrar a su apartamento no la acusaría a ella ni a su hija menor. Testificó que Santiago Alicea le exigió al Sargento una orden de allanamiento y éste le contestó que no la tenía, pero que recordara que a ella no le iba a pasar nada. Declaró, además, que el Sargento le dijo que si se negaba a dejarlos entrar, dejaría a la Unidad de Operaciones Tácticas rodeando el apartamento en lo que conseguían la orden. Por último, la testigo manifestó que ante la negativa de Santiago Alicea, el Sargento la llevó hacia donde se encontraba el Fiscal.

Examinados los hechos narrados anteriormente y al amparo de la norma expuesta en el caso de *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), el Tribunal Superior (Hon. Laura E. Nieves de Van Rhyn, Juez) denegó la moción de supresión de evidencia. Concluyó que a la luz de la totalidad de las circunstancias la acusada había consentido al registro.

Por no estar de acuerdo con este dictamen, Santiago Alicea acude ante esta Curia y en su petición de *certiorari* sostiene que se debe suprimir la evidencia ocupada porque el consentimiento prestado en este caso fue el producto de coacción e intimidación por parte de los agentes del orden público. También señala que la confidencia que le fue in-

formada al Sargento no fue corroborada y, en consecuencia, los policías no tenían causa probable para obtener la orden de allanamiento que había intimado el Sargento el día de los incidentes que originaron la acusación. Decidimos revisar y expedimos el recurso.

## II

El Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 299, en lo pertinente establece:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

En esencia, este artículo protege la intimidad del individuo contra intrusiones arbitrarias del Estado.

Es un principio firmemente establecido que todo registro, allanamiento e incautación llevado a cabo sin orden judicial previa se presume irrazonable y, por ende, inválido. *Pueblo v. Malavé González*, 120 D.P.R. 470, 476 (1988); *Pueblo v. Falú Martínez*, 116 D.P.R. 828 (1986); *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979). Le corresponde al Ministerio Público rebatir esta presunción de invalidez demostrando que el registro realizado fue legal y razonable. *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1988); *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986).

No obstante, existen varias excepciones al citado principio constitucional. Una de estas excepciones es el registro llevado a cabo a base de un consentimiento válido. *Pueblo v. Narváez Cruz*, supra, pág. 436. Dicha excepción "se configura en virtud de la facultad que posee el titular

de la protección constitucional para renunciarla". *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 776, 777 (1982); *Pueblo v. De Jesús Robles*, 92 D.P.R. 345 (1965). Esta renuncia se deduce del acto del acusado de autorizar la entrada del funcionario de orden público o cuando se puede establecer que hubo una invitación implícita de su parte. Sin embargo se "requiere que esa renuncia sea expresa o implícita, pero voluntaria". (Escolio omitido.) *Pueblo v. Acevedo Escobar*, supra, pág. 777. Véase, además, *Pueblo v. Seda*, 82 D.P.R. 719, 728–729 (1961).

■ En *Pueblo v. Seda*, supra, expusimos algunos de los factores determinantes sobre si medió o no una renuncia expresa o tácita. Estos son:

> 1) si ha mediado fuerza o violencia ... 2) si se efectuó el registro después de practicado un arresto ... y 3) si se encontraban otras personas presentes .... *Pueblo v. Seda*, supra, pág. 729.

■ Hemos establecido, además, que lo determinante es que la prueba sobre la renuncia del derecho constitucional sea clara, demostrativa de que no existió coacción verdadera de clase alguna, directa o indirecta. *Pueblo v. Acevedo Escobar*, supra, pág. 777; *Pueblo v. Tribunal*, 91 D.P.R. 19 (1964).

Recientemente en *Pueblo en interés menor N.O.R.*, 136 D.P.R. 949 (1994), señalamos que "la voluntariedad de la renuncia dependerá de la totalidad de las circunstancias, *Schneckloth v. Bustamante*, 412 U.S. 218 (1973); no bastando demostrar una mera sumisión a la autoridad de un oficial del orden público".

Al examinar la totalidad de las circunstancias de cada caso se deben considerar tanto las características de la persona que alegadamente ha consentido al registro como el ambiente en el cual se llevó a cabo. Estos factores no deben ser aplicados mecánicamente, sino que deben ser utilizados como una guía en el análisis de cada caso.

En cuanto a las características personales hay que examinar la edad; la inteligencia promedio; la educación; si la persona estaba intoxicada o bajo la influencia de drogas al momento de prestar el consentimiento; si la persona consintió luego de ser informada de su derecho de rehusarse a consentir o habérsele dado las advertencias "Miranda"; y si había sido arrestado anteriormente y, por lo tanto, tenía conocimiento de las protecciones que provee el sistema legal a los sospechosos de un delito. Véase *U.S. v. Chaidez*, 906 F.2d 377 (8vo Cir. 1990).

En cuanto al ambiente en el que se prestó el consentimiento, hay que considerar si la persona que consintió fue amenazada, intimidada físicamente o maltratada por la Policía; si descansó en promesas o representaciones falsas de la Policía y si estaba en un lugar público o aislado. Por otro lado, si la persona inicialmente no permitió el registro, pero posteriormente lo autorizó, hay que determinar si fue obtenido luego de que la Policía amenazó al ciudadano diciéndole que si no consentía obtendrían una orden de registro y entrarían de todas formas. Véase *United States v. Chaidez*, supra.

Esta norma, expuesta por los tribunales federales, también ha sido adoptada por los tribunales estatales. Por ejemplo, el Tribunal Supremo de Connecticut, en el caso de *Dotson v. Somers*, 402 A.2d 790 (1978), aplicó los factores antes mencionados para suprimir una evidencia obtenida mediante un registro consentido. En este caso la peticionaria inicialmente se negó a dejar a tres (3) agentes de la Policía entrar a su hogar. Los agentes le advirtieron que negarse era inútil pues ellos podían conseguir una orden de allanamiento y regresar a registrar su hogar. Le expresaron que esa sería una situación vergonzosa para ella. Ante estos hechos, el tribunal determinó que el consentimiento no había sido voluntario, pues medió intimidación por parte de la Policía. En apoyo de su contención el Tribunal Supremo de Connecticut afirmó que la amenaza por

la Policía de obtener automáticamente una orden es tan intimidante como la presentación de una expedida ilegalmente.

Por su parte, el profesor La Fave en su conocido tratado sobre registros y allanamientos examina cuidadosamente las circunstancias físicas o psicológicas que vician un consentimiento. La Fave establece que por lo general una amenaza por parte de la Policía de que obtendrá una orden de allanamiento invalida el consentimiento consecuentemente prestado, si en el momento en que se hizo la amenaza no había causa probable para emitir dicha orden.[2] En particular, señala lo siguiente:

> ...If the police make a show of force at the time the consent is sought, or if the surroundings are coercive in other respects, this is to be taken into account in determining whether the consent was voluntarily given. While it is unlikely that a single coercive element will, standing alone, be enough to invalidate a consent, several of them in combination certainly will....
>
> It is significant, for example, that consent has been obtained while the consenting party was confronted by many police officers. The presence of a number of policemen is likely to suggest that the police are contemplating an undertaking which does not depend upon the cooperation of the individual from whom permission to search is being sought....
>
> Similarly, the "display of weapons is a coercive factor that sharply reduces the likelihood of freely given consent". (Escolio omitido.) W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 3, Sec. 8.2, pág. 181.

De la exposición normativa anterior se desprende que en Puerto Rico la validez de un registro consentido es una cuestión de hecho que se determina mediante un examen cuidadoso de la totalidad de las circunstancias que rodean el caso. En particular, al hacer el análisis de la totalidad de las circunstancias del caso, hay que tomar en cuenta las

---

[2] Véase *State v. Morgan*, 423 So. 2d 478 1982); *State v. Mitchell*, 360 So. 2d 189 (1978); *U.S. v. Kaplan*, 895 F.2d 618 (9no Cir. 1990).

características de la persona que consiente y el ambiente en el cual prestó el consentimiento.

## III

En el caso de autos, Santiago Alicea se encontraba en la esquina del edificio donde residía en el Residencial Vista Hermosa conversando con otros vecinos cuando la Unidad de Operaciones Tácticas, desplegando sus armas, rodeó su apartamento. La Sra. María Rivera observó que la Policía estaba tratando de abrir una ventana del apartamento de Santiago Alicea. En ese momento ésta se acercó hacia su apartamento, se negó al registro que pretendía hacer la Policía y les exigió una orden. El sargento Rodríguez, quien no tenía una orden de registro y allanamiento, junto con el Fiscal que dirigía la investigación, amenazaron a Santiago Alicea con que si no los dejaba entrar dejarían el edificio rodeado por la Unidad de Operaciones Tácticas de la Policía en lo que conseguían la orden y entrarían de todas formas. Luego de esta amenaza es que Santiago Alicea consiente al registro sin orden.

La presencia de la Unidad de Operaciones Tácticas rodeando el edificio de Santiago Alicea, con sus armas expuestas, es un factor que intimidaría a cualquier ciudadano. El hecho de que el operativo policiaco se efectuó con un contingente de la Unidad de Operaciones Tácticas de la Policía, con sus armas expuestas y en presencia de todos los vecinos, claramente incrementó la presión de los agentes del orden público sobre Santiago Alicea para que consintiera el registro. El hecho de que tanto el Fiscal como el Sargento la amenazaron con que si no les permitía entrar dejarían el edificio rodeado con los policías de la Unidad de Operaciones Tácticas mientras obtenían la orden judicial, y que conseguirían ésta y entrarían de todas formas, constituyó otro factor que le infundió miedo a Santiago Alicea.

■    Además de ser intimidante, dicha amenaza de los policías, de obtener automáticamente una orden de allanamiento, fue un engaño a Santiago Alicea, pues la única prueba que tenían en su contra era la confidencia sobre la localización de las armas y ésta no fue corroborada. Al no ser corroborada esta confidencia, no constituye causa probable para emitir una orden de allanamiento.(³)

Aunque de los hechos se pueda inferir que Santiago Alicea conocía su derecho a no autorizar un registro sin orden, y que en el ejercicio pleno de sus facultades mentales se negó a permitir el registro, la amenaza de los agentes, unida a las demás circunstancias intimidantes descritas anteriormente, la llevaron a creer que el registro era inevitable y que en realidad no dependía de su consentimiento. Fue este ambiente coercitivo el que llevó a Santiago Alicea a temer por su seguridad y la de su hija menor y, por consiguiente, a acceder al registro sin orden.

Examinadas las circunstancias particulares descritas anteriormente y la doctrina aplicable, concluimos que el consentimiento prestado por Santiago Alicea estuvo viciado. Su consentimiento fue involuntario, pues fue producto de intimidación y coacción de la Policía. Por ende, el registro de la residencia de Santiago Alicea, peticionaria,

---

(³) Al evaluar la suficiencia de una declaración jurada parcialmente basada en confidencias, y que se tomó en cuenta en la expedición de una orden de registro o allanamiento, deben considerarse los criterios establecidos en *Pueblo v. Díaz Díaz*, 106 D.P.R. 348, 354 (1977), a saber: "1) [si] el confidente previamente ha suministrado información correcta; 2)[si] la confidencia conduce hacia el criminal en términos de lugar y tiempo; 3)[si] la confidencia ha sido corroborada por observaciones del agente, o por información proveniente de otras fuentes; y 4)[si] la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse." Se requiere establecer que la información provista por el confidente es confiable, bien mediante corroboración o por otros medios. *Pueblo v. Muñoz, Colón y Ocasio*, 131 D.P.R. 965 (1992).

En el caso de autos, el sargento Rodríguez testificó que no conocía quién había dado la confidencia, que no existía documento escrito en la Policía que demostrase la existencia de la confidencia, que en la confidencia no se mencionó al dueño del apartamento y que tampoco se mencionó que el dueño del apartamento o cualquier otro residente de éste estuvo implicado en los hechos de la confidencia. Aceptó que la única prueba que tuvo para sospechar que en el apartamento de la peticionaria había armas de fuego fue la confidencia dada. Es preciso concluir que la confidencia no fue corroborada.

fue irrazonable y la evidencia fue obtenida ilegalmente. Procedía la supresión solicitada.

*Se dictará sentencia para revocar la resolución recurrida.*

— o —

Opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri.

Estoy conforme con el resultado al que llega la mayoría en su opinión. Considero que el Tribunal de instancia no tenía bases adecuadas para concluir que la peticionaria había consentido voluntariamente al registro, cuya validez ha sido impugnada ante nos en este caso.

No obstante, no estoy conforme con algunos de los pronunciamientos normativos formulados en la opinión de la mayoría. En particular, difiero de la conclusión de que a la luz de la totalidad de las circunstancias presentes en este caso, el consentimiento prestado por la peticionaria fue involuntario y estuvo viciado, por ser producto de intimidación de parte de la Policía. Según mi criterio, no tenemos bases suficientes para llegar a tal conclusión. Sencillamente no sabemos si hubo coacción.

La mayoría, en su opinión, asume que la presencia de la Unidad de Operaciones Tácticas de la Policía en los alrededores del edificio de la peticionaria, con sus armas expuestas, "es un factor que intimidaría a cualquier ciudadano". Opinión mayoritaria, pág. 239. Por eso, ésta concluye que dicha presencia forma parte importante del supuesto "ambiente coercitivo" que llevó a la peticionaria a acceder a un registro sin que mediara orden previa. Estas determinaciones de la mayoría me parecen insostenibles por dos razones. En primer lugar, como cuestión de norma general, no me parece jurídicamente válida la presunción de que una situación en la que unos agentes policíacos es-

tán legítimamente armados, ejercitando lo que es propiamente una de sus funciones como oficiales del orden público, constituye per se un elemento de coacción o intimidación que vicie el consentimiento de los ciudadanos relacionados con la acción policíaca. Adoptar tal posición como una norma jurídica, como lo hace la mayoría en este caso, le impone una traba irrazonable a los agentes del orden público en la consecución de sus funciones oficiales. Además, en el caso particular ante nos, no hay base en los hechos para llegar a la conclusión formulada por la mayoría. Según surge de los propios hechos relatados en su opinión, la peticionaria, en presencia precisamente de los agentes de la Unidad de Operaciones Tácticas, *se negó inicialmente a acceder al registro*. Evidentemente la peticionaria no se había sentido intimidada por la presencia de los agentes policíacos armados. Su cambio de actitud respecto a permitir el registro ocurrió luego de *su conversación con el Fiscal*. Si hubo intimidación o coacción, tiene que haber sido como resultado de dicha conversación. Por ello, es el contenido y el efecto de esa conversación lo que tendría que examinarse cuidadosamente para decidir si, en efecto, el consentimiento prestado por la peticionaria al registro fue voluntario o no.

En mi criterio, pues, el tribunal de instancia debió haber examinado la reacción subjetiva de la peticionaria ante la amenaza del Fiscal de obtener una orden judicial para el registro, a fin de determinar si esa amenaza en efecto vició o no el consentimiento al registro prestado por ella. En el caso ante nos, el foro de instancia resolvió que la peticionaria había consentido al registro. No hay indicio alguno, sin embargo, de que dicho foro haya realizado el crucial examen sobre la reacción subjetiva de la peticionaria ante la amenaza del Fiscal, que debió realizarse. Es posible que la peticionaria haya cambiado de parecer sobre el asunto del registro por haber sido coaccionada por la amenaza del Fiscal. Pero también es posible que su cambio de actitud se

haya debido sencillamente a que, luego de haber hablado con el Fiscal, entendió que el registro procedía en derecho e iba a ser inevitable, por lo que voluntariamente accedió a él. Pueden existir, pues, diversos motivos o razones encontradas que expliquen el cambio de parecer de la peticionaria. Por ello, para adjudicar la validez del consentimiento prestado, luego del cambio de actitud de ésta, era menester inquirir sobre su reacción subjetiva a la amenaza en cuestión.

No surge de los autos que el foro de instancia haya realizado el aludido examen y ya no puede realizarse por el foro de instancia, ni este Tribunal, en revisión, tiene la posibilidad de hacerlo. En vista de ello, no queda otro remedio que concluir que la determinación del tribunal a quo, de que la acusada accedió voluntariamente al registro, no estuvo adecuadamente fundada, por lo que procede que se revoque dicha determinación. Lo anterior, sin embargo, es muy distinto a lo que hace la mayoría en este caso. Ésta, en efecto, presume que la peticionaria sintió miedo y actuó a base de una supuesta intimidación y coacción de la Policía. No creo que existan fundamentos sólidos en los autos ante nos para llegar a tal conclusión. Por eso me veo obligado a concurrir con el resultado de la mayoría, sin poder coincidir con los fundamentos particulares que ofrece para justificarlo.

$$-\,\text{O}\,-$$

Opinión disidente del Juez Asociado Señor Negrón García.

Fue válido el consentimiento de la peticionaria María Santiago Alicea al registro de su apartamento, cuyo saldo fue varias armas alegadamente utilizadas en el asesinato de tres (3) personas en el Residencial Vista Hermosa, en Río Piedras.

## I

No hay una limitación taxativa de los requisitos al evaluar la voluntariedad de un consentimiento. La doctrina sólo requiere que esa renuncia, expresa o implícita, sea voluntaria. *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 777 (1982).

El criterio rector es la *totalidad de las circunstancias* en relación con factores tales como "la edad, inteligencia aparente, si hubo advertencia previa de los derechos constitucionales, cuánto tiempo estuvo detenido previo a éste prestar el consentimiento, si hubo coacción física o si se estaba bajo custodia policiaca. *Schneckloth v. Bustamonte*, ante, pág. 226; *United States v. Rojas*, 783 F.2d 105, 109 (7mo Cir.), *cert.* denegado, 479 U.S. 856 (1986). El tribunal debe tomar en consideración, en adición, si hubo tretas o engaños, promesas o indicación de alguna clase de coacción; al igual que si el consentimiento fue prestado en un sitio público o mientras se encontraba en una estación de policía y, a su vez, si hay indicación alguna de deficiencia mental o cualquier otro motivo que le impida al sujeto escoger libremente entre las alternativas de consentir o no. Véase *United States v. Watson*, 423 U.S. 411 (1976)." *Pueblo en interés menor N.O.R.*, 136 D.P.R. 949, 967 (1994).

Ninguno de estos factores es determinante; *sí es medular examinar el estado subjetivo de la persona.* Acometamos sucintamente esa tarea.

## II

Sostiene la mayoría del Tribunal que el consentimiento de la peticionaria Santiago Alicea fue viciado pues accedió luego que el Fiscal le informara que, de negarse, conseguiría una orden, judicial. Concluyen intimidación y engaño. Aducen que no existía causa probable para dicha orden,

pues la confidencia que dio base a la movilización policíaca no fue corroborada.

En lo *sustantivo*, de entrada, rechazamos la tesis de que la sola mención de una orden de registro, per se, sea factor coercitivo que invalide un consentimiento. Y en este caso no era menester dirimir si existía causa probable para su expedición, pues cuando hablamos de consentimiento, en recta lógica, estamos ante una de las excepciones reconocidas. Como dijimos en *Pueblo v. Acevedo Escobar*, supra, págs. 777–778:

> Varias razones de peso se aducen para fundamentar la alternativa de proceder a un registro luego de obtenerse el consentimiento. Se estima que puede ser percibido como el curso de acción más seguro en términos de minimizar el riesgo de la supresión. Ello tiende a economizar tiempo cuando ese factor es esencial. *De igual modo se prescinde de cumplir con los requisitos técnicos exigidos para una solicitud y expedición del mandamiento. 2 La Fave Search and Seizure*, 1978, sec. 8.1, pág. 611. *Aún más, se acepta que puede solicitarse el consentimiento sin existir causa probable*, ya que provee un mecanismo de pronta exoneración de aquellas personas sobre las cuales se ha sospechado erróneamente. Gardner, *Consent As a Bar to Fourth Amendment Scope—A Critique of a Common Theory*, 71 J. Crim. L. 452 (1980). (Énfasis suplido.)

No es lógico supeditar la validez del consentimiento a la existencia de causa probable que exige nuestra Constitución para librar una orden. El requerimiento de consentimiento persigue precisamente eludir los rigores técnicos de ese trámite. Lo crucial es que de la totalidad de las circunstancias se desprenda su voluntariedad. Y ciertamente aquí, el que el Fiscal aludiera a que conseguiría una orden no significa coacción alguna pues, repetimos, antes de solicitar el consentimiento, no venía obligado a corroborar la confidencia recibida. *Pueblo v. Narváez Cruz*, 121 D.P.R. 429, 446–447 (1988). Obviamente para evitar que se tenga que seguir ese curso, solicitó y obtuvo el consentimiento de la peticionaria Santiago Alicea.

## III

En los *méritos*, fácticamente tampoco medió coacción o engaño alguno.

El ilustrado tribunal de instancia tuvo ante sí la prueba del Ministerio Público consistente del testimonio del Sargento Aníbal Rodríguez y, por la defensa, la declaración de la Sra. María Rivera Ramírez. *Aquilató credibilidad y concluyó que medió un consentimiento válido.*

Debimos respetar su dictamen. Carecemos de una exposición narrativa de la prueba que nos permita descartarlo justificadamente. Aún bajo la relación mayoritaria, ninguno de los testimonios revela que la peticionaria Santiago Alicea se hubiera sentido coaccionada. Todo lo contrario. Los dos (2) únicos testigos coinciden en que ella, aún frente a varios policías armados que rodeaban el edificio y ante la presencia de sus vecinos que observaban los acontecimientos, *"exigió" una orden de allanamiento.* Sólo después de conversar con el Fiscal cambió de opinión.

Debemos recalcar que para determinar la voluntariedad del acto es imprescindible evaluar la reacción subjetiva de la persona. Es su conducta individual en ese momento lo importante. El criterio que se ha de seguir, por lo tanto, es el *subjetivo*; no el *objetivo* de la persona promedio ante una situación fáctica similar, que es el que usa la opinión mayoritaria.

Por ello nos asombra que sin tener la exposición narrativa de la prueba pretenda afianzarse en unas afirmaciones genéricas y cuestionables, tales como que la presencia de los policías con sus armas expuestas "intimidarían a cualquier ciudadano"; que el despliegue de agentes con sus armas en presencia de los vecinos "claramente incrementó la presión" para que ella consintiera; que la amenaza de dejar a los policías para rodear el edificio en lo que se conseguía la orden "constituyó otro factor que le infundió miedo a Santiago Alicea." Opinión mayoritaria, pág. 239.

Esas afirmaciones son sólo producto de unas conjeturas no avaladas por la prueba. Más aún, su validez es susceptible de examinarse al anverso. La presencia de muchos de los vecinos en el "territorio" de la peticionaria Santiago Alicea, lejos de añadir presión, ¿no alivió cualquier posible coacción psicológica? Si se trata de incursionar en el campo especulativo, ¿no es más razonable deducir que el consentimiento dado por una persona cuyo apartamento fue rodeado por agentes armados está investido de mayor voluntariedad cuando numerosos vecinos presencian y fiscalizan las acciones policíacas, que cuando el ciudadano está solo con los agentes o bajo custodia? ¿Cómo puede la mayoría afirmar que la portación de armas por parte de la Policía es intimidante para "cualquier ciudadano"? Al así hacerlo, ¿no olvida la mayoría el análisis objetivo? En el peculiar contexto fáctico en que se buscaba en el apartamento unas armas largas y automáticas alegadamente utilizadas en una masacre, ¿cuál hubiese sido la conducta normal de la Policía? Al buscar armas largas, ¿debían ir sólo con revólver? ¿Mantenerlos en sus fundas? Es incompatible que la mayoría caracterice como "amenaza" mantener rodeado el edificio, olvidando así que esa era la única medida lógica y razonable para evitar cualquier intento de sacar u ocultar tales armas.(¹)

Finalmente, si algo revela la prueba es que esas circunstancias no "intimidaron" a la peticionaria Santiago Alicea, quien, *repetimos*, le "exigió" a la Policía una orden judicial de allanamiento.

Hemos visto que la peticionaria Santiago Alicea *no declaró*. Ello no significa que el tribunal de instancia no

---

(¹) Ante una situación similar, se expresó en *United States v. Agosto*, 502 F.2d 612, 614 (9no Cir. 1974):

"[N]o consideramos que el anuncio de los oficiales de su intención de 'asegurar los predios del garaje' mientras obtenían una orden, requiere que se concluya que cualquier consentimiento brindado de ahí en adelante era 'involuntario per se' ... Más bien, haberlo hecho de otra forma podría haber perjudicado sus oportunidades de obtener la orden así como exponerlos a crítica por descuidadas prácticas policiales si durante su ausencia hubiera desaparecido el contrabando." (Traducción nuestra.)

pudiera evaluar correctamente su reacción subjetiva y la voluntariedad del consentimiento; precisamente lo hizo a través de los testimonios de los dos (2) testigos que detallaron su comportamiento. Sin una exposición narrativa de la prueba no debimos imponer un criterio distinto que desde este estrado apelativo responde a una especulación.

Confirmaríamos.

— O —

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón.

*Hechos*

El Ministerio Público presentó acusaciones contra María Santiago Alicea (en adelante la peticionaria) por infracciones a la Ley de Armas de Puerto Rico, luego de que varios agentes registraran su apartamento tras obtener su consentimiento expreso. Esta solicitó la supresión de la prueba ocupada. El Tribunal Superior celebró vista para la discusión de la referida moción. La prueba del Pueblo consistió del testimonio del Sargento Aníbal Rodríguez. La defensa presentó, como testigo, a la Sra. María Rivera Ramírez.

El sargento Rodríguez declaró, en síntesis, que el 18 de enero de 1993, en horas de la tarde, se encontraba en el Residencial Vista Hermosa, en Río Piedras, investigando el asesinato de tres (3) personas. Allí fue informado de una confidencia recibida en el Cuartel de la Policía de Puerto Nuevo, en la cual indicaron que las armas utilizadas en el crimen estaban en el apartamento 755 del edificio 64 del mencionado residencial.

El sargento Rodríguez y otros agentes de la unidad "SWAT" se dirigieron al edificio. Todos estaban armados. Al llegar al edificio, llamó hacia el interior del apartamento,

asomándose una menor de edad quien resultó ser hija de la peticionaria. El sargento Rodríguez le preguntó por la dueña del apartamento y la menor le señaló que se encontraba en la esquina del edificio. La peticionaria llegó en ese momento, informándole el sargento Rodríguez sobre la confidencia recibida. Este le pidió permiso para registrar el apartamento, a lo que la peticionaria se opuso exigiéndole una orden de allanamiento. El sargento Rodríguez le indicó que no la tenía en ese momento y procedió a informarle al Fiscal José R. Cancio, quien dirigía la investigación, sobre la negativa de la dueña del apartamento a acceder al registro. El Fiscal pidió hablar con la peticionaria y el sargento Rodríguez la llevó con él. Luego de hablar con el Fiscal, la peticionaria prestó su consentimiento para que registraran el apartamento. Los agentes ocuparon tres (3) armas de fuego, procediendo a arrestar a la peticionaria y a su hija.

En el contrainterrogatorio el sargento Rodríguez declaró que no tenía información sobre quién había recibido la confidencia y que ésta no estaba registrada. Negó que hubiese dicho a la peticionaria que si consentía al registro no sería acusada. Indicó que tanto él como el Fiscal Cancio le dijeron que si no consentía al registro, la Policía se encargaría de conseguir una orden de allanamiento ese mismo día. Señaló, también, que no se le habían dado advertencias de ley a la acusada antes de que ésta diera su consentimiento. Informó que, además de la peticionaria y su hija, residían en el apartamento tres (3) hijos mayores de edad, y que las armas no fueron encontradas en el cuarto de la peticionaria. Declaró, por último, que la única prueba que tenía para sospechar que había armas en el apartamento era la confidencia y que, mientras hablaba con la peticionaria, los otros agentes rodeaban el apartamento.

La prueba de la defensa, como ya dijimos, consistió en el testimonio de la Sra. María Rivera Ramírez, quien reside

en el apartamento 738 del edificio 62 del antedicho residencial. La testigo declaró que en la tarde de 18 de enero de 1993 se encontraba en su residencia. Al llegar la Policía al residencial, bajó de su apartamento y se sentó a hablar con la peticionaria y otros vecinos. Señaló que vio cuando la Policía trataba de abrir una ventana del apartamento de la peticionaria y le preguntó al sargento Rodríguez por qué lo estaban haciendo. De acuerdo con la testigo, éste le contestó que había recibido una confidencia de que las armas utilizadas en los asesinatos estaban guardadas en dicho apartamento y que le había indicado a la peticionaria que si dejaba entrar a la Policía, ni ella ni su hija serían acusadas. Señaló la testigo que la peticionaria exigió al sargento Rodríguez una orden de allanamiento, pero que éste le dijo que no la tenía en ese momento y que si se negaba a dejarlos entrar, dejaría a la Policía rodeando el apartamento en lo que la conseguían. Después de este suceso, el sargento Rodríguez y la peticionaria se dirigieron hacia donde estaba el Fiscal.

Luego de escuchar los testimonios vertidos en la vista, el tribunal dictó resolución denegando la solicitud de supresión de evidencia "por entender que el registro se sostenía como una actuación razonable dentro de las circunstancias y que la acusada había consentido al registro ...".[1]

Inconforme con el resultado, la peticionaria acude ante nos, mediante recurso de *certiorari*, para solicitar la revocación de la resolución y, por consiguiente, la supresión de la evidencia ocupada. Señala los errores siguientes:

1) Por ser un allanamiento sin orden(,) corresponde al (E)stado establecer por cual excepción legal registraron el apartamento.
2) Se debe suprimir la evidencia ocupada en el apartamento ya que teniendo información la policía que podría incriminar a la acusada, tenía la obligación legal de hacerle las advertencias de ley.

---

[1] La resolución recoge un breve resumen de lo que declararon los testigos. Se señala, por error, que la peticionaria prestó testimonio durante la vista.

3) Se debe suprimir la evidencia ocupada ya que el consentimiento en este caso no fue uno inteligente ni voluntario.

4) Se debe suprimir la evidencia ocupada ya que el Sargento Rodríguez(,) cuando le indicó a la peticionaria que iba a conseguir una orden de allanamiento(,) no tenía la causa probable requerida por la jurisprudencia para conseguir la misma; por lo tanto(,) el consentimiento dado por la acusada en estas circunstancias no fue uno inteligente.

Decidimos revisar y expedimos el recurso.

I

*La protección contra registros, incautaciones y allanamientos irrazonables*

La Sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 299, garantiza "el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables", salvo autorización judicial "cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse". Igual protección ofrece la Constitución de Estados Unidos de América en la Enmienda Cuarta, con la diferencia que en la nuestra se dispone, expresamente, la inadmisibilidad de la evidencia obtenida mediante registros, incautaciones y allanamientos irrazonables. Los objetivos básicos que persigue nuestra disposición constitucional son "proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión ...". *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984). Ahora bien, esta garantía tendrá efecto sobre objetos y lugares sólo si están protegidos por un interés individual fundado en una expectativa legí-

tima de intimidad. *Katz v. United States*, 389 U.S. 347 (1967); *Pueblo v. Ramos Santos*, 132 D.P.R. 363 (1992).

Como corolario a este mandato constitucional, el registro, allanamiento e incautación sin orden se presume irrazonable y, por ende, inválido. *Pueblo, v. Malavé González*, 120 D.P.R. 470, 476 (1988); *Pueblo v. Lebrón*, 108 D.P.R. 324, 329 (1979). No obstante, tanto la jurisprudencia federal como la de Puerto Rico han reconocido ciertas excepciones bajo las cuales resultan constitucionalmente válidos los registros, allanamientos e incautaciones sin orden judicial. Por tal razón, para rebatir la presunción de ilegalidad, el Ministerio Público tiene que presentar prueba sobre las circunstancias especiales que le permitieron actuar sin orden. *Pueblo v. Ramos Santos*, supra; *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170, 176–177 (1986).

## II

*El registro consentido*

Una de las excepciones a la norma constitucional de que todo registro, incautación y allanamiento debe realizarse con orden judicial lo constituye el registro llevado a cabo a base de un consentimiento válido. *Katz v. United States*, supra; *Chambers v. Maroney*, 399 U.S. 42 (1970); *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1988); *Pueblo v. Ramírez Lebrón*, 123 D.P.R. 391 (1989); *Pueblo v. Ramos Santos*, supra. Aunque éste, mas que una limitación al alcance de la protección, es una renuncia a dicha protección. Si una persona accede a un registro, contra el cual está protegido constitucionalmente, renuncia a la protección y queda así validada la actuación gubernamental. El efecto concreto que esto tiene es que no progresaría una moción de supresión de evidencia con relación a una incautación producto de un registro consentido. E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Ed. Forum, 1991, Vol. 1, Sec. 6.15A, pág. 424.

## III

*Las advertencias en los registros consentidos*

En Estados Unidos el caso principal sobre esta materia es *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). En éste se explora lo que constituye un consentimiento prestado voluntariamente y la prueba que debe presentar el Ministerio Público para demostrar la voluntariedad del consentimiento. La controversia principal en cuanto a la validez del consentimiento se refería a si era requisito esencial que la persona que consintió hubiera estado consciente de que tenía la alternativa de no consentir, y si había que advertir del derecho a no consentir.

El primer aspecto que se destaca es que no existe una definición talismánica de voluntariedad. El marco de referencia jurisprudencial existente era el relacionado a las confesiones voluntarias de sospechosos bajo custodia. Dentro de ese contexto ningún criterio era, por sí solo, determinante, sino que la voluntariedad de la confesión se deducía de un análisis de la totalidad de las circunstancias presentes en el caso. *Schnerkloth v. Bustamonte*, supra, págs. 224, 226. El Tribunal Supremo extendió ese análisis al contexto de los registros y allanamientos consentidos a los fines de determinar la voluntariedad del consentimiento. Íd., pág. 227. Resolvió que lo único decisivo era si, bajo la totalidad de las circunstancias, el consentimiento fue voluntario. Entre los factores que pueden tomarse en consideración están si la persona conocía o no su derecho a no consentir, y si estaba bajo arresto o custodia. Sin embargo, lo importante y determinante es que el consentimiento, expreso o implícito, no sea el producto de coacción o coerción ejercida por los agentes de la policía en forma expresa o implícita. Íd., págs. 248–249.

El Tribunal Supremo se negó a aplicar, para la validez de un registro consentido, la doctrina que exige el conocimiento previo del derecho y las consecuencias de su

renuncia. Por tal razón rechazó establecer como norma el requisito de hacer unas advertencias legales tipo *Miranda*(²) antes de obtener el consentimiento para un registro sin orden. *Schneckloth v. Bustamonte*, supra, págs. 231–232. Una norma, a esos efectos, había sido ampliamente rechazada tanto por las cortes federales como por las estatales, ya que su imposición resultaba poco práctica a la luz de las circunstancias en que normalmente ocurren los registros consentidos. Se señala que éstos suelen ocurrir, por ejemplo, en las carreteras o en la casa u oficina de la persona, bajo condiciones informales y distintas a la atmósfera "estructurada" de un juicio formal y de un interrogatorio bajo custodia. Íd.

Señaló el Tribunal que los derechos bajo la Enmienda Cuarta nada tienen que ver con el derecho de un acusado a un juicio justo, lo que pretende protegerse con tales advertencias, y que existe una amplia diferencia entre ambos derechos. Sobre el particular, entendió que los requisitos de "conocimiento" e "inteligencia", como elementos integrantes de la validez de una renuncia, se articulan para aquellos derechos dirigidos a asegurar la integridad de todo el proceso criminal instado contra el acusado y a la búsqueda de la verdad; mientras que los derechos bajo la Enmienda Cuarta sólo protegen la privacidad de la persona contra las intrusiones arbitrarias del Estado, o como se dijo en *Tehan v. Shott*, 382 U.S. 406 (1966), "el derecho del individuo a que se le deje solo". (Traducción nuestra.) De ahí que el requisito de demostrar una renuncia o abandono intencional de un derecho o privilegio conocido; esto es, que la persona estaba consciente de lo que estaba renunciando, estándar fijado en *Johnson v. Zerbst*, 304 U.S. 458 (1938), para la renuncia de los derechos constitucionales garantizados a los acusados,(³) no es aplicable a los re-

---

(²) *Miranda v. Arizona*, 384 U.S. 436 (1966).

(³) Como, por ejemplo, el derecho de asistencia de abogado o el derecho a confrontación.

gistros y allanamientos consentidos. Véase parte C de la opinión de *Schneckloth v. Bustamonte*, supra, págs. 235–246. El tribunal distingue a *Miranda v. Arizona*, 384 U.S. 436 (1966), de los hechos de *Schneckloth v. Bustamonte*, supra, al indicar que las técnicas de interrogatorio empleadas por la policía en *Miranda v. Arizona*, supra, y la forma en que tuvieron lugar —bajo custodia— produjeron una situación inherentemente coercitiva de la cual no podía concluirse que las respuestas de la persona fueran el producto de su libre selección. En cambio, cuando la persona consiente al registro en respuesta a la solicitud que le hace el agente, en un lugar cuya naturaleza es distinta al ambiente aislado de una estación de policía remota, no hay por qué creer que la respuesta fue producto de la coerción o coacción de la policía. *Bustamonte*, supra, pág. 247. Se señala, incluso, que los registros consentidos forman parte de las técnicas de investigación utilizadas por los agentes del orden público. *Bustamonte*, supra, pág. 231.

Al final, el Tribunal resume la norma de la forma siguiente:

> Resolvemos ... que cuando el sujeto de un registro no está bajo custodia y el Estado intenta justificar un registro basado en el consentimiento, las enmiendas cuarta y décimocuarta requieren que éste demuestre que el consentimiento fue voluntario, y no el producto de coacción o coerción, sea expresa o implícita. La voluntariedad es una cuestión de hecho ha ser determinada de la totalidad de las circunstancias, y aunque el conocimiento del sujeto sobre su derecho a rehusarse es un factor a tomarse en consideración no se le requiere al Estado que demuestre tal conocimiento como requisito para establecer que el consentimiento fue voluntario. (Traducción nuestra.) *Schneckloth v. Bustamonte*, supra, págs. 248–249.

## IV

*La amenaza de gestionar u obtener una orden de registro*

La norma de la totalidad de las circunstancias ha sido interpretada por la jurisprudencia federal para incluir una

serie de factores a fin de determinar la voluntariedad del consentimiento.

En *U.S. v. Chaidez*, 906 F.2d 377, 381 (8vo Cir. 1990), se resumen de la manera siguiente:

> Las siguientes características de la persona que ha dado el consentimiento son relevantes al momento de valorar la voluntariedad del consentimiento prestado: (1) su edad, [*Scheneckloth v. Bustamonte, supra*,] pág. 226, 93 S.Ct., pág. 2047; *Haley v. Ohio*, 332 U.S. 596, 599 (1948); (2) su inteligencia promedio y su educación, *United States v. Watson*, 423 U.S. 411, 425 (1976); *Bustamonte*, 412 U.S., pág. 226, 93 S.Ct., pág. 2047; *Payne v. Arkansas*, 356 U.S. 560, 567 (1958); *Fikes v. Alabama*, 352 U.S. 191, 196–97 (1957); (3) Si la persona estaba intoxicada o bajo la influencia de drogas, al momento del consentimiento, *United States v. Rambo*, 789 F.2d 1289, 1297 (8vo Cir.1986); (4) Si la persona consintió luego de ser informada de su derecho de rehusarse a consentir o habérsele dado las advertencias *Miranda, Watson*, 423 U.S., págs. 424–25, 96 S.Ct., pág. 828; *Bustamonte*, 412 U.S., pág. 226, 93 S.Ct., pág. 2047; y (5) si había sido arrestado anteriormente y, por lo tanto, tenía conocimiento de las protecciones que provee el sistema legal a los sospechosos de un delito, *Watson*, 423 U.S., págs. 424–25, 96 S.Ct., pág. 828, *Laing v. United States*, 891 F.2d 683, 686 (8vo Cir. 1989); *United States v. Carter*, 884 F.2d 368, 375 (8vo Cir. 1989).
>
> Al examinar el ambiente en el cual se prestó el consentimiento, los tribunales deben examinar si la persona que consintió: "(1) estaba detenida o fue interrogada por un período largo o corto de tiempo, *Bustamonte*, 412 U.S., pág. 226, 93 S.Ct., pág. 2047; (2) si fue amenazada, intimidada físicamente, o maltratada por la policía, *Watson*, 423 U.S., pág. 424, 96 S.Ct. pág. 828; *Bustamonte*, 412 U.S., pág. 226, 93 S.Ct., pág. 2047; *Reck v. Pate*, 367 U.S. 433, 442–43 (1961); *Laing*, 891 F.2d, pág. 686; (3) si descansó en promesas o falsas representaciones realizadas por la policía, *Watson*, 423 U.S., pág. 424, 96 S.Ct., pág. 828; *Laing*, 891 F.2d., pág. 686; *Carter*, 884 F.2d, págs. 374–75; (4) estaba bajo custodia o arrestado cuando dio el consentimiento, *Watson*, 423 U.S., pág. 424, 96 S.Ct., pág. 828; (5) estaba en un lugar público o aislado, *id.*; o (6) se rehusó al registro o se mantuvo en silencio mientras éste se realizaba, *United States v. Olivier-Becerril*, 861 F.2d 424, 425–26 (5to Cir.1988); *United States v. Espinosa*, 782 F.2d 888, 890–92 (10mo

Cir.1986); *United States v. López*, 777 F.2d. 543, 546–48 (10mo Cir.1985)." (Traducción nuestra.)[4]

Entre estos factores también se encuentra si el consentimiento para el registro fue obtenido luego de que la Policía ha amenazado al ciudadano de que, si no consiente, procederán a gestionar u obtener una orden de registro.

Los tribunales federales han tenido dificultad en establecer una norma uniforme para estos casos. Particularmente han tenido el problema de distinguir dicha situación de la acaecida en *Bumper v. North Carolina*, 391 U.S. 543 (1968). En este caso, la abuela del acusado permitió que la policía registrara su casa luego de que uno de los agentes le indicara que tenía una orden de registro. Durante la vista de supresión de una evidencia obtenida dentro de la casa, el Ministerio Público no presentó la orden de registro. El Tribunal Supremo federal resolvió que no se puede justificar un registro realizado mediante consentimiento, cuando éste fue dado luego de que un agente aseguró que poseía una orden. Íd., pág. 549. Señaló el Tribunal:

> Cuando el Ministerio Público pretende descansar en que hubo consentimiento para justificar la legalidad de un registro, éste tiene el peso de probar que el consentimiento fue, de hecho, libre y voluntario. No se cumple con tal requisito si se presenta, meramente, que la persona consintió ante un reclamo de autoridad. *Un registro realizado mediante una orden no puede justificarse sobre la base del consentimiento* si luego resulta que la orden de registro es inválida. El resultado sería igual cuando el estado no intenta validar la orden, o no puede presentar la orden.
>
> Cuando un agente del orden público reclama autoridad para llevar a cabo un registro, está anunciando, en efecto, que el ocupante no tiene derecho a resistir el registro. Esta es una situación coercitiva[...Y] cuando existe coerción no puede haber

---

[4] Véase, además, W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 3, Sec. 8.2, págs. 174–235, donde se discuten las distintos factores que se han tomado en cuenta para determinar si el consentimiento para el registro fue voluntario.

consentimiento. (Traducción y énfasis nuestros y escolios omitidos.) *Bumper v. North Carolina*, supra, págs. 548–550.

Varias jurisdicciones han resuelto que la amenaza de *gestionar* una orden de registro no es una situación similar a la de *Bumper v. North Carolina*, supra. Señalan, en síntesis, que en dicho caso el Tribunal Supremo federal resolvió que existe coerción cuando la policía informa que posee una orden de registro, ya que dicha orden autoriza a que la policía realice el registro, independientemente de que haya o no consentimiento. Por lo tanto, no puede establecerse que hubo un registro consentido luego de que la policía muestra una orden de registro, que es, posteriormente, declarada inválida, debido a que la orden obliga al ciudadano a someterse a las autoridades. Por el contrario, razonan que la amenaza de gestionar una orden de registro no es una manifestación intrínsecamente falsa o un reclamo de autoridad infundado. La policía sencillamente está informando que tiene la autoridad legal para llevar a cabo dicha gestión. Por tal razón, esas jurisdicciones han validado el consentimiento prestado luego de tal amenaza, ya que la persona respondió a una manifestación de algo que es legalmente correcto.[5]

Sin embargo, también se ha concluido que el resultado sería distinto cuando la Policía declara que *obtendrá* una orden de registro.[6] Existen opiniones que señalan una gran similitud entre los casos en que la Policía tiene una orden de registro inválida y aquellos en que amenaza con obtener la orden. Estas discuten que en *Bumper v. North Carolina*, supra, el Tribunal Supremo federal resolvió que el consentimiento fue obtenido bajo coacción debido a que "cuando los agentes reclamaron autoridad para registrar

---

[5] Véanse: *State v. Kissner*, 252 N.W.2d 330, 334 (1977); *People v. Hancock*, 525 P.2d 435, 437 (1974); *Commonwealth v. Mamon*, 297 A.2d 471, 474 (1972); *United States v. Boukater*, 409 F.2d 537, 538 (5to Cir. 1969).

[6] Véanse: *United States v. Faruolo*, 506 F.2d 490, 493–495 (2do Cir. 1974); *United States v. Boukater*, supra.

la casa mediante una orden, estaban anunciando que, en efecto, el inquilino no tenía derecho a resistirse". (Traducción nuestra.) Íd., pág. 550. Bajo esas circunstancias el ciudadano permitirá el registro, ya que entiende que éste es inevitable. De igual forma, cuando la Policía amenaza con obtener una orden, el ciudadano consentirá porque creerá que el registro es inevitable. Por esta razón aseguran que ambas situaciones están basadas en la inevitabilidad del registro y, por lo tanto, ambas son inherentemente coercitivas. La única diferencia entre éstas es el elemento de inmediatez. Los que consideran que esta distinción gestionar-obtener es importante argumentan que la Policía no puede crear la impresión de que no existe la discreción de un funcionario para la expedición o no de una orden de registro. Entienden que amenazar con que la orden será expedida automáticamente es una situación tan coercitiva como la ocurrida en *Bumper v. North Carolina*, supra.[7] Incluso, se recomienda, en uno de estos casos, que la Policía podría muy bien informar que va a gestionar que se expida una orden de registro y que, según su experiencia, considera que ésta será expedida; pero haciendo la aclaración de que la decisión de expedirla o no descansa en la sana discreción del funcionario judicial a quien se le solicita.[8]

No obstante lo anterior, existen opiniones que señalan que la manifestación de que se va a obtener una orden de registro no es coercitiva per se, y que no hay por qué asumir que un consentimiento prestado luego de tal amenaza es inválido.[9] Otras añaden que la decisión de *Bumper v.*

---

[7] Véanse: *Dotson v. Sumers*, 402 A.2d 790, 794 (1978); LaFave, *op. cit.*, pág. 187; Nota, *Consent to Search in Response to Police Threats to Seek or to Obtain a Search Warrant: Some Alternatives*, 71 J. Crim. L. & Criminology 163, 166 (1980).

[8] Véanse: *United States v. Faruolo*, supra, opinión concurrente del Juez de Distrito Federal Newman.

[9] Véanse: *Stephenson v. State*, 494 S.W.2d 900, 904–905 (1973); *United States v. Agosto*, 502 F.2d 612, 614 (9no Cir. 1974); *State v. Rathburn*, 239 N.W.2d 253, 256 (1976); *State v. Lange*, 255 N.W.2d 59, 64–65 (1977); *U.S. v. Twomey*, 884 F.2d 46, 50–52 (1er Cir. 1989); *U.S. v. Hummer*, 916 F.2d 186, 190 (4to Cir. 1990); *State v.*

*North Carolina*, supra, gira en torno a la reacción subjetiva del individuo ante el anuncio o amenaza de la policía, y no en dichas manifestaciones como tal.([10]) Es decir, lo importante no es lo que le dijo la Policía, sino el hecho de si el ciudadano se sintió coaccionado. Conforme a estos casos, la decisión de *Bumper v. North Carolina*, supra, no aplicará a aquellas situaciones en que la persona consintió voluntariamente al registro, independientemente de cuál haya sido la manifestación realizada por la Policía. Esto es, que dicho consentimiento no respondió a un reclamo de autoridad por parte de la Policía, ya emanara éste de una orden de registro invalidada o de las propias palabras de la Policía. Estos tribunales validaron el registro sobre la base del consentimiento debido a que el ciudadano no fue coaccionado.

De todo lo anterior surge que lo importante, según la decisión de *Bumper v. North Carolina*, supra, es examinar la reacción subjetiva del ciudadadano ante las manifestaciones de la Policía. Por consiguiente, los tribunales, al enfrentarse a una situación en la cual la Policía haya amenazado con buscar una orden de registro, deberán examinar la reacción subjetiva del individuo ante tal anuncio o amenaza a fin de determinar, dentro de la totalidad de las circunstancias, si hubo o no consentimiento.([11])

---

*Graham*, 492 N.W.2d 845, 848–849 (1992); *State v. Partee*, 482 N.W.2d 272, 277 (1992).

([10]) Véanse: *Hoover v. Beto*, 467 F.2d 516, 521–522 (5to Cir. 1972); *Earls v. State*, 496 S.W.2d 464, 467 (1973); *Earls v. State of Tennessee*, 379 F. Supp. 576, 579–580 (E. Tenn. 1974).

([11]) En varias jurisdicciones se ha resuelto que la amenaza de obtener una orden de registro, cuando no existía causa probable para la expedición de una orden, tendrá el efecto de invalidar el consentimiento prestado luego de tal amenaza. Véanse: *Dobson v. Somers*, 402 A.2d 790, 795–796 (1978); *State v. Mitchell* 360 So. 2d 189, 191 (1978); *State v. Morgan*, 423 So. 2d 478, 479 (1982). *A contrario sensu*, no se afectará la validez del consentimiento prestado si la Policía, al informar que obtendría una orden de registro, tenía la causa probable necesaria para que ésta se expidiera. *United States v. Scheiblauer*, 472 F.2d 297, 301 (9no Cir. 1973); *Code v. State*, 214 S.E.2d 873, 877 (1975); *State v. Rathburn*, 239 N.W.2d 253, 255–256 (1976); *Schikora v. State*, 652 P.2d 473, 477 (Alaska 1982); *United States v. Calvente*, 722 F.2d 1019, 1023 (2do Cir. 1983); *State v. Hanley*, 363 N.W.2d 735, 739 (Minn. 1985). *State v. Owens*, 418 N.W.2d 340, 342–344 (Iowa 1988); *State v. Brown*, 783 P.2d 1278,

# V

*Los registros consentidos en Puerto Rico*

En Puerto Rico, la doctrina sobre los registros consentidos, según expuesta en *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770 (1982), establece que la renuncia a la protección constitucional ha de hacerse por el titular de ésta de forma *"expresa o ímplicita, pero voluntaria."* (Énfasis suplido.) Íd., pág. 777.

Señalamos en dicho caso que algunos de los factores a considerar para determinar si en efecto medió o no una renuncia expresa o tácita son: (1) si hubo fuerza o violencia; (2) si el registro se realizó después de un arresto; (3) si se encontraban otras personas presentes. *Pueblo v. Acevedo Escobar*, supra, pág. 777. Véase, también, *Pueblo v. Seda*, 82 D.P.R. 719, 729 (1961). Aunque hicimos alusión únicamente a los tres (3) factores enumerados, también hemos señalado que éstos son solo algunos de los factores determinantes. *Pueblo v. Acevedo Escobar,* supra; *Pueblo v. Narváez Cruz*, supra, pág. 444. La renuncia puede deducirse del acto del acusado de permitir la entrada del agente, *Pueblo v. Rivera Romero*, 83 D.P.R. 471, 481 (1961); o cuando puede establecerse que hubo una invitación expresa o ímplicita de su parte, *Pueblo v. Pérez Narváez*, 121 D.P.R. 429, 444 (1988); *Pueblo v. Acevedo Escobar*, supra;

---

1281–1285 (1989); *U.S. v. Kaplan*, 895 F.2d 618, 622 (9no Cir. 1990); *U.S. v. Duran*, 957 F.2d 499, 502 (7mo Cir. 1992); *U.S. v. White*, 979 F.2d 539, 542 (7mo Cir. 1992). Sobre esta última situación se ha decidido que no existe coerción cuando un agente informa que si la persona no consiente al registro, obtendrá una orden de registro y allanamiento y existía base para solicitar y obtener dicha orden. *United States v. Faruolo*, supra. Esta conclusión está predicada en que la amenaza, en tales circunstancias, no envuelve ningún tipo de treta o engaño, sino que, al contrario, están informándole al ciudadano de la situación legal en que éste se encuentra. Véanse: *People v. McClure*, 39 Cal. App. 3d 64, 113 Cal. Reptr. 815, 819 (1974); *Commonwealth v. Woods*, 368 A.2d 304 (1976); *United States v. Dennis*, 625 F.2d 782, 793 (8vo Cir. 1980).

Conforme a LaFave, no es suficiente, para que el consentimiento sea válido, que la Policía piense, de buena fe, que se va a expedir el mandamiento, sino que es necesario que exista, de hecho, causa probable para el registro o allanamiento. La-Fave, *op. cit.*, pág. 188.

*Pueblo v. Rivera Romero*, 83 D.P.R. 471, 481 (1961). Como podemos notar, la doctrina adoptada por este Tribunal coincide con lo resuelto en *Schneckloth v. Bustamonte*, supra; sólo se requiere que el consentimiento o renuncia a la protección constitucional sea expresa o implícita, pero voluntaria.([12]) Al igual que lo establecido en la doctrina federal, concluimos que "la prueba sobre la renuncia ha de ser clara demostrativa de que no existió coacción verdadera de clase alguna, directa o indirecta." Íd. De igual forma omitimos el requisito del conocimiento.

De lo anterior surge que en Puerto Rico el consentimiento prestado a un registro se determinará mediante un examen de si éste fue voluntario y si hubo ausencia de coacción, ya sea física o psicológica, siendo esta última determinable, dentro de la totalidad de las circunstancias, de acuerdo al estado subjetivo vulnerable de quien la presta y dentro de un criterio de razonabilidad.

En cuanto a las advertencias antes de un registro consentido, es ahora cuando tenemos la primera oportunidad de expresarnos. Consideramos apropiado seguir el curso decisorio establecido en *Schneckloth v. Bustamonte*, supra.([13]) Por tal razón opinamos que los agentes del orden público no tienen la obligación de impartir advertencias legales tipo *Miranda*, como por ejemplo una que le advierta al ciudadano que puede rehusarse a que se lleve a cabo, en su persona o en su propiedad, un registro sin orden. Cabe recordar que para que surja la obligación de advertir sobre la existencia de una serie de derechos constitucionales garantizados por nuestro ordenamiento, la doctrina jurisprudencial firmemente establecida, tanto en la jurisdicción federal como en la nuestra, postula que la investigación criminal iniciada por los agentes del orden

---

([12]) En *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 777 (1982), nos referimos al consentimiento como el ejercicio de la "facultad que posee el titular de la protección constitucional para renunciarla".

([13]) Véase Chiesa, *op. cit.*, pág. 426.

público debe estar centrada en una persona en particular y dicha persona debe estar bajo custodia y sujeta a ser interrogada por los agentes. *Escobedo v. Illinois*, 378 U.S. 478 (1964); *Miranda v. Arizona,* supra; *Rivera Escuté v. Jefe Penitenciaría*, 92 D.P.R. 765, 781 (1965); *Pueblo v. López Guzmán*, 131 D.P.R. 867 (1992). Dichas advertencias hay que hacerlas inmediatamente que la persona está bajo custodia y se le intenta interrogar. *Pueblo en interés menor J.A.B.C.*, 123 D.P.R. 551, 565 (1989); *Pueblo v. Pellot Pérez*, 121 D.P.R. 791, 802 (1988). Seguir un curso de acción distinto, como por ejemplo, que sea necesario que la Policía haga unas advertencias tipo *Miranda*, antes de solicitar el consentimiento para registro, iría en contradicción con decisiones anteriores de este Tribunal. Véanse: *Pueblo v. Pellot*, supra, y *Pueblo en interés menor J.A.B.C.*, supra, entre otros. En ellos establecimos, enfáticamente, que se estaba imponiendo el requisito de las advertencias únicamente cuando se interroga a un sospechoso bajo custodia gubernamental. No hemos decidido que hay que hacerle las advertencias a todo posible sospechoso de un delito en una investigación criminal. Sería contradictorio eximir al Estado de que le haga las advertencias legales a un posible sospechoso de un delito sobre el cual no se ha centralizado la investigación y no se encuentra bajo custodia; y por otro lado, exigirle que le brinde unas advertencias a un posible sospechoso, en igual situación, para que éste consienta a que se lleve a cabo, en su persona o en su propiedad, un registro. De esta forma armonizamos las situaciones de registros de personas que no están bajo custodia con los interrogatorios de personas en circunstancias similares.[14]

Los fundamentos de razonabilidad para practicar un registro sin orden cuando la persona ha consentido los expu-

---

[14] En cuanto a un resultado igual bajo *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), véase *The Supreme Court, 1972 term*, 87 Harv. L. Rev. 55, 218–219 (1973).

simos en *Pueblo v. Acevedo Escobar*, supra, págs. 777–778. Allí expresamos:

> Varias razones de peso se aducen para fundamentar la alternativa de proceder a un registro luego de obtener el consentimiento. Se estima que puede ser percibido como el curso de acción más seguro en términos de minimizar el riesgo de la supresión. Ello tiende a economizar tiempo cuando ese factor es esencial. De igual modo se prescinde de cumplir con los requisitos técnicos exigidos para una solicitud y expedición del mandamiento. ... Aún más, se acepta que puede solicitarse el consentimiento sin existir causa probable, ya que provee un mecanismo de pronta exoneración de aquellas personas sobre las cuales se ha sospechado erróneamente....

Nótese, sin embargo, que esta última expresión se refiere a que para solicitar el consentimiento para el registro no es necesario que exista causa probable de que la persona a quien se le solicita el consentimiento haya cometido algún delito. A nuestro entender, dicha expresión no se extiende a que la Policía puede amenazar con obtener una orden de registro cuando no existe causa probable para su expedición y obtiene, mediante tal amenaza, el consentimiento de la persona a registrarse. Sin embargo, como veremos más adelante, la situación fáctica del caso de autos hace innecesario expresarnos sobre ese asunto. Lo crucial en este caso es examinar cuál fue la reacción subjetiva de la peticionaria ante tal anuncio o amenaza, para así poder determinar, dentro de la totalidad de las circunstancias, si hubo o no coacción. El anuncio o la amenaza de obtener una orden de registro es sólo uno de los factores que se tomará en cuenta para determinar la validez del consentimiento subsiguientemente prestado y no es, por sí solo, un criterio determinante. Tampoco constituye, por sí mismo, coacción o coerción.

## VI

*Aplicación de las normas de derecho a los hechos de este caso*

En el caso que nos ocupa, la peticionaria impugna la validez del consentimiento prestado en las circunstancias aquí presentes, específicamente porque la Policía, al tener información que podía incriminarla, tenía la obligación de hacerle unas advertencias legales tipo *Miranda* antes de tratar de conseguir el consentimiento, y porque el consentimiento no fue inteligente ni voluntario. Opinamos que no tiene razón.

Los funcionarios públicos no tenían ninguna obligación de impartir advertencias legales de clase alguna. De acuerdo con los hechos consignados por las partes, la confidencia recibida por la Policía indicaba que las armas utilizadas en la comisión de los asesinatos perpetrados ese día en el Residencial Vista Hermosa se ocultaban en el apartamento 755 del edificio 64 del mencionado complejo de viviendas. La confidencia no mencionaba personas ni le imputaba a la peticionaria la comisión de algún delito. Se limitaba a señalar el lugar donde se escondían las armas. La peticionaria no figuraba como sospechosa de delito en ese momento y, mucho menos, se centraba en su persona la investigación de los agentes. La peticionaria tampoco estaba bajo custodia de la Policía ni sujeta a interrogatorio. Cuando el sargento Rodríguez le solicitó permiso para registrar el apartamento, la peticionaria se encontraba en la esquina del edificio conversando con otros vecinos. Al negarse al registro y exigir una orden de allanamiento fue llevada ante el Fiscal que se encontraba en el residencial investigando los hechos. Luego de conversar con él, prestó su consentimiento. No hay indicios de que estuviera bajo arresto o de que su libertad estuviera restringida. *Cfr. Pueblo v. Pacheco Báez*, 130 D.P.R. 664 (1992). Mucho menos estaba sujeta a un interrogatorio bajo custodia. Véase *Pue-*

*blo v. López Guzmán*, supra. Por el contrario, la peticionaria se encontraba en lo que puede calificarse como su propio "territorio", su vecindario. *Schneckloth v. Bustamonte*, supra, pág. 247.

En cuanto a una advertencia de su derecho a no consentir al registro, ya señalamos que los agentes del orden público no están obligados a impartirla. Además, ésta hubiera sido innecesaria, toda vez que la peticionaria demostró claramente conocer cuál era su derecho al negarse al registro y exigirle al agente una orden de allanamiento.

Tampoco surge de la prueba que mediara violencia o coacción por parte de la Policía. No hubo actos de violencia contra la peticionaria ni contra los vecinos. El que los agentes estuviesen armados, lo cual es propio de sus funciones como oficiales del orden público, no constituye un elemento de coerción o intimidación a los fines de viciar el consentimiento. La peticionaria ni siquiera alega haberse sentido intimidada por ello y, de hecho, estando en presencia de todos los agentes se negó, inicialmente, a acceder al registro. El único elemento que produce un cambio en la opinión de la peticionaria fue su conversación con el Fiscal. No existe indicio alguno de actos impropios de parte de este funcionario, ni se alegan hechos o palabras que puedan establecer que el consentimiento prestado estuviera viciado como resultado de esta conversación. La única alegación es que el funcionario le dijo que si consentía al registro, ni ella ni su hija serían acusadas, y que, por el contrario, si no consentía al registro la policía se encargaría de conseguir una orden de allanamiento. La peticionaria sustenta la primera manifestación, supuestamente hecha por el Fiscal, mediante el testimonio de la testigo que declaró en la vista. Este testimonio no le mereció credibilidad al tribunal de instancia. De otro lado, el sargento Rodríguez admitió haberle hecho la segunda manifestación. Al respecto, la peticionaria argumenta que por ser la confidencia

insuficiente para establecer causa probable a los fines de una orden de allanamiento, los funcionarios no podían decirle que gestionarían una orden. Alega que como resultado de ello prestó consentimiento bajo engaño de que la expedición de la orden era segura. Aparte de que no existe prueba en este caso de que los funcionarios actuaran de mala fe al decirle a la peticionaria que conseguirían una orden, tampoco hay prueba de que ésta fuera coaccionada mediante tal anuncio o "amenaza", factor éste que es determinante.

Siguiendo los criterios citados en *U.S. v. Chaidez*, supra, referentes a las características de la persona que presta el consentimiento, encontramos que la peticionaria es una persona adulta, de inteligencia y educación promedio. No se alegó ni estableció que padeciera de enfermedad o deficiencia mental. También estaba en perfecto estado de consciencia. No se alegó ni demostró que estuviera bajo los efectos de sustancias tóxicas o embriagantes cuando consintió. Estaba consciente, y así lo demostró, de que tenía la alternativa de no consentir al registro al exigirle a la Policía una orden de allanamiento. En cuanto al ambiente imperante al momento de prestar el consentimiento, la prueba demostró que la peticionaria no estaba detenida, arrestada o bajo custodia, ni sujeta a interrogatorio de la Policía. El consentimiento se hizo expresamente en un lugar público y abierto, y en el que estaban presentes otras personas.

A la luz de la totalidad de las circunstancias presentes en este caso, las cuales surgieron con meridiana claridad de la prueba ofrecida por el Ministerio Público y la aportada por la peticionaria, opinamos que el consentimiento prestado por la peticionaria fue libre y voluntario. La discusión de si la confidencia era o no suficiente para configurar la causa probable de una orden de registro y allanamiento es innecesaria. *Pueblo v. Narváez Cruz*, supra,

págs. 446–447. Por consiguiente confirmaríamos la Resolución emitida por el Tribunal Superior, razón por la que disentimos.