EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.*
JAVIER ANDINO TOSAS y OTROS, demandados y recurridos.

*Número:* CE-94-710          *Resuelto:* 11 de octubre de 1996

Pedro A. Delgado Hernández, Procurador General, y Carlos Lugo Fiol, Procurador General Interino, abogados del peticionario; Zinia I. Acevedo Sánchez, de la Sociedad para la Asistencia Legal, abogada de los recurridos.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El Ministerio Público acude mediante un recurso de *certiorari* y solicita la revisión de una resolución del tribunal de instancia que suprimió cierta evidencia. Por entender que los guardias municipales que intervinieron con los acusados tenían la facultad en ley para arrestarlos y que, por consiguiente, la intervención e incautación fue válida, revocamos.

I

El 5 de julio de 1993 dos (2) guardias municipales del Municipio de Caguas prestaban una ronda preventiva en sus patrullas cuando escucharon a través de un radioteléfono que había ocurrido un asalto. Según el testimonio prestado por uno de los guardias durante la vista de supresión, la patrulla de la guardia municipal tenía dos (2) radioteléfonos, uno con la frecuencia de la Policía estatal y otro con la frecuencia de la Guardia Municipal. En el caso de autos, la información recibida por los guardias municipales fue transmitida por la Comandancia de la Policía y captada a través de la frecuencia de dicho Cuerpo. La información indicaba que había ocurrido un asalto en Caguas y que los responsables escaparon en un vehículo Honda Accord, tablilla 15-A-636, que se dirigía hacia la carretera Núm. 172. De inmediato, los guardias comenzaron a recorrer dicha carretera en busca del auto descrito. Cerca del límite entre Caguas y Cidra, escucharon otra comunicación en la frecuencia de la Policía la cual indicaba que se había recibido una llamada anónima informando que el auto había entrado en el motel Flor del Valle, el cual está localizado en la jurisdicción de Cidra.

Los guardias se dirigieron al motel y, mientras entrevistaban al encargado, vieron que un vehículo salía de una de las cabañas. Al percatarse de que la descripción y el nú-

mero de tablilla correspondían con la información que habían recibido por la radio, lo detuvieron. Mientras un guardia vigilaba a los ocupantes, el otro registró el auto y ocupó una pistola. Pocos minutos después llegaron los policías estatales, quienes llevaron a los detenidos al cuartel de Caguas y presentaron las denuncias correspondientes. Tras la determinación de causa probable se presentaron unas acusaciones por infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 414 y 418.

Oportunamente, cada uno de los acusados solicitó por separado la supresión de la evidencia incautada. Alegaron que los guardias municipales no tenían la autoridad en ley para arrestarlos. Sostuvieron, además, que no existía la corroboración necesaria para los arrestos y registros fundamentados en confidencias. *Pueblo v. Ortiz Alvarado*, 135 D.P.R. 41 (1994). El 7 de septiembre de 1994 se celebró una vista de supresión de evidencia a la cual comparecieron los tres (3) acusados y en la cual declaró bajo juramento el guardia municipal Miguel A. Caraballo Meléndez. Al día siguiente, tras cada parte argumentar su posición, el tribunal declaró con lugar la moción de supresión. Según expresa la resolución, la Ley de la Guardia Municipal sólo permite que un guardia municipal arreste por información y creencia cuando haya mediado "estrecha coordinación con la Policía Estatal". El tribunal resolvió que en este caso la utilización de un radioteléfono con la frecuencia de la Policía estatal no constituía la estrecha coordinación requerida por la ley. Puesto que el arresto se realizó sin una orden, el Ministerio Público tenía el peso de la prueba para demostrar la validez de la intervención. Según el tribunal, el Estado no produjo prueba alguna de los convenios escritos o acuerdos verbales entre la Policía estatal y los guardias municipales en relación con la utilización de la frecuencia de radio.

A raíz de dicha determinación, el Ministerio Público acudió ante nos mediante un recurso de *certiorari* y solicitó

la paralización de los procedimientos en instancia, petición a la cual accedimos. Ambas partes presentaron sus alegatos y hemos contado con el beneficio de sus respectivas posiciones. Según los acusados, además de que no hubo una estrecha coordinación, en este caso los guardias municipales actuaron fuera de su jurisdicción, pues el arresto se llevó a cabo en Cidra. Por su parte, el Ministerio Público alega que los guardias municipales actuaron dentro de las facultades dispuestas en la ley.

En esencia, debemos resolver si la recepción de información por patrullas municipales a través de la frecuencia de la Policía estatal, constituye la "estrecha coordinación" que la ley exige entre ambos Cuerpos del orden público.[1]

## II

En Puerto Rico, los funcionarios públicos sólo pueden realizar arrestos sin orden judicial en aquellas instancias en que la ley les conceda expresamente dicha facultad. De no existir tal facultad, el funcionario no posee mayor poder para el arresto del que tiene cualquier ciudadano particular. En ocasiones anteriores hemos interpretado el alcance de la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la cual dispone las circunstancias en que un "funcionario del orden público" puede realizar un arresto sin una orden.

En *Pueblo v. Velazco Bracero*, 128 D.P.R. 180 (1991), resolvimos que un policía de la Administración de Veteranos (entidad gubernamental federal) es un funciona-

---

[1] Es preciso aclarar que recientemente el estatuto que crea la Guardia Municipal fue enmendado por la Ley Núm. 45 de 22 mayo de 1996, conocida como Ley de la Policía Municipal, 21 L.P.R.A. sec. 1061 *et seq*. Esta ley cambió el nombre de este cuerpo de seguridad a Policía Municipal y concedió a los guardias municipales la misma autoridad y facultad como agentes del orden público que tiene la Policía estatal.

Debido a que la controversia de autos surgió estando vigente la ley anterior, nuestro análisis se limitará a ella.

rio del orden público a los fines de la citada Regla 11 y, por consiguiente, estaba autorizado a efectuar un arresto si tuvo motivos fundados para creer que la persona que iba a ser arrestada había cometido un delito en su presencia. Posteriormente, en *Pueblo v. Rosario Igartúa,* 129 D.P.R. 1055 (1992), resolvimos que un guardia de seguridad, empleado de la Autoridad de Tierras con funciones de vigilancia, no era un funcionario del orden público bajo la Regla 11 de Procedimiento Criminal, *supra.* En ausencia de autoridad expresa en la ley para arrestar, dicho guardia sólo podía realizar arrestos si su actuación reunía los requisitos establecidos en la Regla 12 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la cual regula los arrestos realizados por particulares. En ambas ocasiones examinamos la naturaleza de las funciones realizadas por cada empleado gubernamental y cotejamos que la ley le concediera autoridad para realizar los arrestos.

■    En *Pueblo v. Velazco Bracero,* supra, aclaramos que, de ordinario, los policías son los funcionarios del orden público a quienes cobijan las disposiciones de la citada Regla 11. Al mismo tiempo, reconocimos la existencia de casos particulares en que la Legislatura ha concedido la facultad para arrestar. Allí expresamos lo siguiente:

> Conforme a las circunstancias particulares del país y las instituciones creadas para garantizar la seguridad interna, siempre se ha considerado que los miembros de la Policía de Puerto Rico son oficiales o funcionarios del orden público. Ellos son los que tienen la obligación principal de *"proteger a las personas y a la propiedad"* y *"mantener y conservar el orden público"* en todo el país. Ley de la Policía de Puerto Rico de 1974 (25 L.P.R.A. sec. 1001 *et seq.*).
>
> Sin embargo, la Asamblea Legislativa también ha creado otros cuerpos policiales con el propósito de proveer seguridad en unos sectores que, por su naturaleza, requieren una vigilancia particularizada. Mediante leyes especiales se ha otorgado a esos funcionarios, *bajo las circunstancias descritas en cada uno de los estatutos, autoridad para efectuar arrestos en el desempeño de sus funciones.* Entre estos cuerpos policiales se encuentran los guardias municipales, 21 L.P.R.A. sec. 1063; los agen-

tes investigadores del Negociado de Investigaciones Especiales del Departamento de Justicia, 3 L.P.R.A. sec. 138d; los oficiales de custodia de la Administración de Corrección, 4 L.P.R.A. sec. 1126; el Secretario de Salud, inspectores, médicos y oficiales de salud a cargo de implantar la Ley de Sanidad, 3 L.P.R.A. sec. 186; el cuerpo de vigilantes del Departamento de Recursos Naturales, 12 L.P.R.A. sec. 1205; el Director Ejecutivo de la Autoridad de los Puertos y cualquier empleado de la Autoridad de los Puertos designado por aquél para vigilar los aeropuertos, 23 L.P.R.A. sec. 465. (Énfasis suplido y en el original.) *Pueblo v. Velazco Bracero*, supra, pág. 189.

En cada uno de estos casos especiales, la ley reconoce a determinados funcionarios la facultad de arrestar. Sin embargo, y tal como señalamos en *Pueblo v. Velazco Bracero*, supra, pág. 189, ese poder es delegado "bajo las circunstancias descritas en cada uno de los estatutos". (Énfasis suprimido.) Además de ser un poder que se ejerce en función de las competencias de cada organismo gubernamental, la concesión expresa del poder de arresto no siempre requiere que en su otorgación se haga referencia a la Regla 11, *supra*, ni a las circunstancias allí presentadas. La facultad para el arresto puede ser análoga a la dispuesta en la citada Regla 11 o estar circunscrita a circunstancias más limitadas. Este último es el caso de los guardias municipales.

■ La Guardia Municipal fue creada mediante la Ley Núm. 19 de 12 de mayo de 1977 (21 L.P.R.A. sec. 1061 *et seq.*) con el objetivo de aliviar el incremento en la carga de trabajo de la Policía estatal que, según la Legislatura, es consecuencia del aumento en la incidencia criminal en todo el país. Aunque la ley no mencionaba expresamente que la Guardia Municipal tendría la facultad para arrestar, el lenguaje utilizado, en unión a los propósitos que guiaron al legislador a adoptar el estatuto, son indicativos de que esa fue la intención. A estos nuevos cuerpos policíacos a nivel municipal se les impuso la obligación de

... compeler la obediencia a las ordenanzas y reglamentos

promulgados por el municipio correspondiente y a las disposiciones sobre estacionamiento ilegal de vehículos y prevenir, descubrir y perseguir los delitos que se cometan en su presencia dentro de los límites jurisdiccionales del municipio correspondiente.([2]) Sec. 3 de la Ley de la Guardia Municipal, 21 L.P.R.A. sec. 1063.

Esta disposición debe verse en conjunto con el inciso (a) de la Sec. 6 (21 L.P.R.A. sec. 1066(a)), la cual detalla el alcance de las responsabilidades de la Guardia Municipal:

> En adición a otros deberes que se impongan en virtud de [esta ley] y su Reglamento, cada cuerpo de la Guardia Municipal tendrá, dentro de los límites territoriales del municipio correspondiente, los siguientes poderes y responsabilidades:
> (a) Cumplir y hacer cumplir la ley, proteger la vida y la propiedad de los ciudadanos, velar por la seguridad y el orden público, prevenir la comisión de actos delictivos y perseguir los delitos que se cometan en su presencia y aquéllos que se le sometan por información y creencia en estrecha coordinación con la Policía Estatal.

■ Ambas disposiciones claramente confieren, *si bien de forma limitada,* una facultad para efectuar arrestos en el desempeño de sus funciones. Cuando se habla de *prevenir* y *perseguir* delitos, ambos verbos suponen el tipo de intervención con ciudadanos particulares que puede dar base a un arresto sin una orden judicial. Además, los conceptos "delitos que se cometan en su presencia" e "información y creencia", hacen referencia al vocabulario de la Regla 11 de Procedimiento Criminal, *supra,* y su jurisprudencia interpretativa. Véase *Pueblo v. Ruiz Bosch,* 127 D.P.R. 762 (1991), en el que se habla de "información o conocimiento". Sin embargo, salta a la vista que en los casos de delitos que se conozcan por información o creencia, los guardias municipales no tienen el mismo poder que un

---

([2]) Mediante la Ley Núm. 12 de 18 de junio de 1991 (21 L.P.R.A. sec. 1063) se enmendó esta sección para "prevenir, descubrir y perseguir los delitos que se cometan en su presencia dentro de los límites jurisdiccionales del municipio correspondiente, o *aun fuera de éstos cuando sea necesario para culminar una intervención iniciada en el municipio de su jurisdicción".* (Énfasis suplido.)

policía estatal según la Regla 11, *supra*. A diferencia de los últimos, quienes hacen un juicio propio en cuanto a la existencia de motivos fundados, los guardias municipales dependen en estos casos de que medie una "estrecha coordinación con la Policía Estatal".

## III

La controversia que se ha de resolver es si las referidas disposiciones de la Ley de la Guardia Municipal autorizaban el arresto de los recurridos. Claramente en este caso no se cometió un delito en presencia de un guardia municipal. Nuestra función se limita más bien a interpretar si la frase "estrecha coordinación con la Policía Estatal" tiene el alcance de validar la intervención que los guardias municipales realizaron como respuesta a la información trasmitida por el radioteléfono. Al resolver en la negativa, el tribunal de instancia se fundamentó en la ausencia de prueba de convenios verbales o escritos entre la Guardia Municipal de Caguas y la Policía estatal. Al asumir dicha postura, el foro de instancia erró.

█ . Si bien la jurisdicción de la Policía estatal tiene primacía sobre la correspondiente a la Guardia Municipal, dentro de los límites territoriales de cada municipio, ambas funcionan de forma concurrente. En ese sentido, debemos recordar que la Guardia Municipal fue creada con el propósito de complementar la labor de la Policía estatal, objetivo que naturalmente requiere una comunicación constante y fluida entre ambos Cuerpos del orden público. No podemos suponer que la Policía estatal no conocía que la Guardia Municipal tenía acceso a su frecuencia. Tampoco podemos obviar que ese es precisamente el modo en que una patrulla estatal puede comunicarse con una municipal. La utilización de la misma frecuencia es una manifestación concreta de los objetivos que inspiraron la Ley de la Guardia Municipal. Es una manera efectiva y

rápida en que ambos Cuerpos policíacos pueden coordinar sus esfuerzos. En fin, nos parece que la aplicación correcta de la ley al caso de autos requiere reconocer que en efecto hubo una estrecha coordinación y que la intervención de los guardias municipales fue válida.

■ Lo anterior no significa que el eficaz desempeño de la encomienda de perseguir los delitos no exija en determinadas circunstancias una coordinación más directa entre ambos Cuerpos, como sería el diseño de una operación conjunta previamente planificada. Sin embargo, en el caso de autos fue suficiente que los guardias municipales advinieran en conocimiento de la comisión de un delito por información o creencia de la Policía estatal y casi inmediatamente después de la detención entregaran a los sospechosos a efectivos de ese Cuerpo policial. Requerir otra conducta por parte de la Guardia Municipal de Caguas despojaría de todo sentido a la Ley Núm. 19, *supra*.

Por otro lado, es menester atender otro asunto que aunque no fue resuelto por el tribunal de instancia, sí fue argumentado por ambas partes. Éste se refiere a si los guardias municipales podían culminar una intervención en otra jurisdicción cuando ella no se originó por la comisión de un delito en su presencia. Aducen los recurridos que mientras la Sec. 3 de la Ley Núm. 19, *supra*, dispone que se culmine una intervención fuera de la jurisdicción municipal cuando el crimen se cometiera en presencia del guardia municipal, el inciso (a) de la citada Sec. 6 no incluye esta posibilidad cuando la intervención sea producto de información y creencia en estrecha coordinación con la Policía estatal. Aunque de primera impresión la distinción es plausible, ésta no tiene el efecto que pretenden los recurridos.

■ La parte de la citada Sec. 3 que permite "prevenir, descubrir y perseguir delitos que se cometan" fuera de la jurisdicción del municipio correspondiente "cuando sea necesario para culminar una intervención iniciada en el municipio de su jurisdicción", no estaba incluida en la ley

original. Las Secs. 3 y 6(a) de la Ley Núm. 19, *supra*, sólo hacían referencia a las facultades de los guardias municipales *dentro de su jurisdicción*. No es sino hasta 1991, con la aprobación de la Ley Núm. 12, *supra*, que se incluye la disposición que permite culminar la intervención en otra jurisdicción. El legislador, sin embargo, sólo consideró necesario incluir la enmienda en la Sec. 3 y dejó inalterada la Sec. 6(a). Esto seguramente respondió a que la referida Sec. 3 tenía un carácter más general que la otra y, por lo tanto, resultó suficiente realizar el cambio en esa primera parte de la ley. A base de lo anterior no cabe la menor duda de que los guardias municipales de Caguas podían culminar en Cidra una persecución de un delito que comenzaron en su jurisdicción de origen.

En conclusión, los hechos, vistos en conjunto, son indicativos de que entre la Policía estatal y la Guardia Municipal de Caguas medió la estrecha coordinación necesaria para permitir que los últimos intervinieran con los recurridos. Resolvemos que los guardias municipales tenían la facultad en ley para realizar el arresto y, por consiguiente, el tribunal erró al suprimir la evidencia a base de la supuesta ilegalidad de tal proceder.

Por los fundamentos antes expuestos, *se revoca la resolución recurrida que suprimió la evidencia por el fundamento de que no existía autoridad en ley para realizar el arresto. Se devuelve el caso para procedimientos ulteriores compatibles con lo aquí resuelto.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino.