EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico Peticionario v. Hamilton Cruz Calderón Acusado-recurrido | Certiorari 2002 TSPR 5 155 DPR _____ |
|---|---|

Número del Caso: CC-2001-393

Fecha: 16/enero/2002

Tribunal de Circuito de Apelaciones:
                     Circuito Regional VII

Juez Ponente:
                     Hon. José L. Miranda de Hostos

Oficina del Procurador General:
                     Lcda Yasmin Chaves Dávila
                     Procuradora General Auxiliar

Abogada de la Parte Recurrida:
                     Lcda. Cándida Valdespino Zapata

Materia: Art. 401, Ley de Sustancias Controladas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        vs.                CC-2001-393     CERTIORARI

Hamilton Cruz Calderón

    Acusado-recurrido

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ

San Juan, Puerto Rico, a 16 de enero de 2002

El día 26 de agosto de 2000, el guardia municipal Luis A. Lugo Vázquez se encontraba realizando una ronda preventiva, a pie y vestido de civil, en el residencial Catañito Garden, Municipio de Carolina. Al éste pasar frente al Edificio 4, Apartamento D-10 del referido complejo de vivienda, el aquí recurrido, Hamilton Cruz Calderón, salió de dicho apartamento y alegadamente le ofreció al mencionado guardia la sustancia controlada conocida como cocaína.

Lugo Vázquez "aceptó" la oferta de droga, por lo que, acto seguido, Cruz Calderón alegadamente sacó del bolsillo de su pantalón una bolsa grande transparente que contenía varias envolturas

de papel de aluminio, y otras bolsas pequeñas con polvo blanco, en su interior.

Luego de que Cruz Calderón le hizo entrega de una de las bolsas transparentes al guardia municipal, éste se identificó como policía. Como consecuencia de ello, Cruz Calderón emprendió carrera hacia el balcón del antes mencionado apartamento, lugar donde fue alcanzado por el guardia. Luego de un forcejeo entre ellos, Lugo Vázquez procedió a arrestar a Cruz Calderón. Mientras dicho incidente ocurría, la evidencia alegadamente cayó al suelo, por lo que, luego del arresto, el guardia Lugo Vázquez procedió a ocuparla. La misma consistía de dos envolturas plásticas con cocaína, seis envolturas de papel de aluminio con cocaína y treinta y cinco dólares ($35.00) en efectivo.

Por estos hechos, el ministerio público presentó denuncia contra el aquí recurrido, Hamilton Cruz Calderón, por infracción al Artículo 401 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401, ante la Sala de Carolina del Tribunal de Primera Instancia; esto es, se le imputó posesión con intención de distribuir la sustancia controlada conocida como cocaína sin autorización legal para ello. Tras la celebración de la vista preliminar, en la cual se determinó causa probable para acusar, se presentó la correspondiente acusación, quedando el juicio señalado para el 18 de enero de 2001.

La defensa presentó oportuna moción de supresión de la evidencia incautada por el policía municipal Lugo Vázquez. En la misma, se adujo que el arresto sin orden de Cruz Calderón

había sido ilegal. En la vista señalada a esos efectos por el tribunal de instancia, declaró bajo juramento el guardia municipal Lugo Vázquez. Este declaró, a preguntas de la fiscalía, que el día del arresto estaba vestido de civil y que se encontraba efectuando una ronda preventiva por el área del mencionado residencial, ello debido a la alta incidencia de escalamientos en el sector. Que fue precisamente mientras realizaba dicha ronda cuando coincidió con el acusado Cruz Calderón. Señaló además, que realizaba dicha ronda preventiva sin llevar puesto el uniforme oficial; esto con el propósito de no ser identificado.

Concluida la vista, el Tribunal de Primera Instancia denegó la solicitud de supresión de evidencia. Conforme surge de la resolución emitida a esos efectos, el tribunal determinó que había motivo fundado para la intervención de Lugo Vázquez con el acusado. Dicho foro le adjudicó entera credibilidad a los hechos narrados por el policía municipal y descartó la posibilidad de que el testimonio de Lugo Vázquez hubiera sido uno estereotipado. En vista de lo anterior, ordenó la continuación de los procedimientos en contra de Cruz Calderón.

A raíz de dicha determinación, Cruz Calderón acudió --vía recurso de certiorari-- ante el Tribunal de Circuito de Apelaciones. En dicho escrito se señaló que el foro primario había incidido al denegar la moción de supresión de evidencia, ello a pesar de que la ilegalidad del arresto consistía en que el mismo fue efectuado por un policía municipal haciendo gestiones de agente encubierto, hecho específicamente

prohibido por ley; alegó, además, que el foro primario erró al otorgarle credibilidad al testimonio del policía Lugo Vázquez por haber sido el mismo uno estereotipado.

El foro apelativo intermedio, mediante sentencia emitida el día 11 de abril de 2001, revocó la resolución recurrida. En apoyo de tal determinación, dicho tribunal concluyó que el arresto de Cruz Calderón fue ilegal pues, al llevarse a cabo el mismo, el policía municipal Lugo Vázquez se encontraba realizando una labor de investigación criminal so color de autoridad sin su uniforme, encubriendo su identidad, ello en contravención a las disposiciones de la Ley Orgánica de la Policía Municipal que prohíben que un guardia municipal realice funciones de agente encubierto.[1] Sostuvo, además, el foro apelativo intermedio que la ronda preventiva que estaba llevando a cabo Lugo Vázquez el día de los hechos no la estaba realizando en coordinación con la Policía Estatal, según ello lo ordena el referido estatuto orgánico. Al así resolver, dispuso que debido a que la evidencia ocupada a Cruz Calderón fue producto de un arresto ilegal, el foro primario debió haberla suprimido.[2]

Inconforme con la actuación del Tribunal de Circuito de Apelaciones, el Procurador General, en representación del ministerio público, acudió en revisión --vía certiorari-- ante

---

[1] Véase a tales efectos, Ley de la Policía Municipal, 21 L.P.R.A. sec. 1063.

[2] Expresó dicho tribunal que debido a que el arresto del acusado había sido ilegal, no estimó necesario atender el señalamiento de error referente a si el testimonio de Lugo Vázquez había sido estereotipado o no.

este Tribunal. Alega el Procurador General que procede revocar la sentencia emitida por el foro apelativo intermedio, debido a que dicho foro incidió:

> "...al invalidar un arresto efectuado por un policía municipal cuando no está en disputa que un particular hubiese estado autorizado a efectuar el arresto, aún cuando el agente, en violación al Reglamento de la Policía Municipal, no tuviera puesto su uniforme al momento de efectuar el arresto."

**El 15 de junio de 2001, mediante Resolución a tales efectos, le concedimos al acusado recurrido el término de veinte (20) días para que compareciera y mostrara causa por la cual no se debía expedir el recurso radicado por el Procurador General y dictar Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones. Contando con la comparecencia de ambas partes, y estando en posición de resolver, procedemos a así hacerlo.**

**I**

Sabido es que la Sección 10 del Artículo II de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico establece que sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo el lugar a registrarse, y las personas a detenerse. De tales disposiciones se desprende la prohibición de que, de ordinario, se pueda arrestar a alguna persona sin previa orden judicial fundada en una determinación de causa probable. Pueblo v. Colón Bernier,

res. el 20 de abril de 1999, 99 TSPR 58; Pueblo v. Martínez Torres, 120 D.P.R. 496 (1988); Pueblo v. Vázquez Méndez, 117 D.P.R. 170 (1986); Pueblo v. González Rivera, 100 D.P.R. 651 (1972). "De este modo se protege la dignidad de las personas, y se interpone la figura imparcial del Juez entre los funcionarios públicos y la ciudadanía para ofrecer una mayor garantía de razonabilidad a la intrusión estatal." Pueblo v. Colón Bernier, ante; E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 207 (1984).

La referida disposición constitucional tiene como objetivo principal proteger la intimidad y dignidad del individuo frente a las actuaciones arbitrarias del Estado. Pueblo v. Santiago Alicea I, 138 D.P.R. 230 (1995); Pueblo en interés menor N.O.R., 136 D.P.R. 949 (1994); Pueblo v. Martínez Torres, ante. Ello con el propósito de brindar al individuo protección contra todo tipo de detención personal, sea ésta a través de un arresto o cualquier otra clase de intervención con la libertad de movimiento, y contra registros y allanamientos de cualquier propiedad o lugar sobre la cual el individuo tenga cierta expectativa razonable de intimidad. Ernesto L. Chiesa, Derecho Procesal Penal de Puerto Rico y Estado Unidos, Colombia, Ed. Forum, 1991, Vol. I, Sec. 6.1, pág. 280. Pueblo v. Serrano Cancel, res. el 23 de abril de 1999, 99 TSPR 62; Pueblo v. Blase Vázquez, res. el 23 de junio de 1999, 99 TSPR 98; Pueblo v. Yip Berríos, 142 D.P.R. 386, 397 (1997); Ernesto L. Chiesa, Derecho Procesal Penal de Puerto Rico y Estado Unidos, ante, a la pág.

283; Olga E. Resumil, Derecho Procesal Penal, Oxford, Equity Publishing Co., 1990, Tomo 1, pág. 203.

La protección que ofrece la Constitución contra el arresto irrazonable es tal que si un arresto se realiza sin orden judicial, éste se presume inválido, y compete al ministerio público rebatir la presunción de irrazonabilidad mediante la presentación de prueba sobre las circunstancias especiales que requirieron tal intervención por los agentes del orden público. Pueblo v. Colón Bernier, ante; Pueblo v. Rivera Colón, 128 D.P.R. 672, 681 (1991).

La Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234, es el mecanismo procesal mediante el cual todo ciudadano puede reclamar los derechos que la referida disposición constitucional consagra. Pueblo v. Blase Vázquez, ante. Sabido es que el mencionado estatuto dispone que toda persona agraviada por un arresto, y subsiguiente allanamiento o registro ilegal, podrá solicitar del tribunal la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro.

Resulta menester advertir que la regla general de que todo arresto válido debe estar precedido por la expedición de una orden judicial encuentra ciertas excepciones establecidas mediante legislación. De conformidad con lo anterior, nuestro ordenamiento procesal penal permite que los agentes del orden público, en ciertas circunstancias, puedan efectuar arrestos y subsiguientes registros sin la expedición de una orden

judicial previa. <u>Pueblo v. Martínez Torres</u>, ante; <u>Pueblo v. Malavé González</u>, 120 D.P.R. 470 (1988).[3]

La Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap.II, R.11, dispone que puede efectuarse un arresto <u>sin</u> orden judicial, <u>por un funcionario del orden público</u>, cuando: a) dicho funcionario tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia; b) la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia; y c) cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que dicho delito se hubiere cometido o no en realidad. <u>Pueblo v. Serrano Cancel</u>, ante.

Nuestras Reglas de Procedimiento Criminal guardan silencio sobre lo que significa "funcionario del orden público". <u>Pueblo v. Rosario Igartúa</u>, 129 D.P.R. 1055 (1992). Ante la ausencia de una disposición estatutaria o reglamentaria aclaratoria a tales efectos, en <u>Pueblo v. Velazco Bracero</u>, 128 D.P.R. 180 (1991), establecimos que, con el fin de determinar quién es o quién no es un "funcionario del orden público", es menester evaluar si a ese funcionario se le ha otorgado autoridad por ley para efectuar arrestos en el desempeño de sus funciones. "Conforme a las circunstancias particulares del país y las instituciones creadas para garantizar la seguridad

---

[3] Véase, además, <u>Pueblo v. Rivera Rivera</u>, 117 D.P.R. 283 (1986); <u>Pueblo v. Vázquez Méndez</u>, 117 D.P.R. 170 (1986); <u>Pueblo v. Del Río</u>, 113 D.P.R. 684 (1982); <u>Pueblo v. Alcalá Fernández</u>, 109 D.P.R. 326 (1980).

interna, siempre se ha considerado que los miembros de la Policía de Puerto Rico son oficiales o funcionarios del orden público." Id., a la pág. 189.

Ciertamente éstos son los funcionarios que ostentan la obligación principal de velar por la protección de los ciudadanos de Puerto Rico y su propiedad, estando además encargados de mantener y conservar el orden público. Ley de la Policía de Puerto Rico, Artículo 3 de la Ley Núm. 53 de 10 de junio de 1996, 25 L.P.R.A. sec. 3102. De ordinario, son los miembros de la Policía de Puerto Rico los funcionarios del orden público a quienes cobija lo dispuesto por la Regla 11.

Ello no obstante, la Asamblea Legislativa se ha encargado de crear otros cuerpos policiales, con funciones análogas a las de la Policía de Puerto Rico, esto con el propósito de proveer seguridad a ciertos sectores del país. Haciendo referencia a los casos particulares en que la Legislatura ha extendido y concedido a otros funcionarios la facultad para arrestar, en Pueblo v. Velazco Bracero, ante, a la pág. 189, expresamos que "[M]ediante leyes especiales se ha otorgado a esos funcionarios, bajo las circunstancias descritas en cada uno de los estatutos, autoridad para efectuar arrestos en el desempeño de sus funciones." Véase: Pueblo v. Andino Tosas, 141 D.P.R. 652, 657 (1996). (Subrayado nuestro.)

Dentro de tales cuerpos policiales especiales, creados mediante legislación, se encuentran precisamente los guardias municipales. Así, la propia Ley de la Policía Municipal dispone

sobre la facultad que a éstos se les ha otorgado para efectuar

arrestos en el desempeño de sus deberes:

> No obstante lo dispuesto en el art. 10 de la Ley de Agosto 22, 1974, Núm. 26, Parte 2, cualquier municipio podrá establecer un cuerpo de vigilancia y protección pública que se denominará "Policía Municipal", cuya obligación será compeler la obediencia a las ordenanzas y reglamentos promulgados por el municipio correspondiente, a las disposiciones sobre estacionamiento ilegal de vehículos y prevenir, descubrir y perseguir los delitos que se cometan en su presencia dentro de los límites jurisdiccionales del municipio correspondiente, o aún fuera de éstos cuando sea necesario para culminar una intervención iniciada en el municipio de su jurisdicción. 21 L.P.R.A. 1063, (Subrayado nuestro).

Por otra parte, en la sección referente a los poderes y

responsabilidades asignados a los miembros de la Policía

Municipal, se dispone además que, fuera de los deberes que se

le impongan en virtud de otras leyes, el Cuerpo de la Policía

Municipal tendrá, dentro de los límites territoriales del

municipio correspondiente, las siguientes obligaciones:

> (a) Cumplir y hacer cumplir la ley, proteger la vida y la propiedad de los ciudadanos, velar por la seguridad y el orden público, prevenir la comisión de actos delictivos y perseguir los delitos que se cometan en su presencia y aquellos que se le sometan por información y por creencia en coordinación con la Policía Estatal. 21 L.P.R.A. sec. 1066 (a). (Subrayado nuestro.)

Las antes transcritas disposiciones de la Ley de la

Policía Municipal nos llevaron a expresar, en Pueblo v. Andino

Tosas, ante, a la página 658, que la facultad para arrestar de

los guardias municipales estaba circunscrita, por ley, "...a

circunstancias más limitadas.." a las establecidas en la Regla

11 de Procedimiento Criminal. De hecho, una lectura de dichas

disposiciones de ley revela que la facultad de arrestar de los guardias municipales es similar a aquella que el Inciso (a) de la Regla 12 de Procedimiento Criminal le concede a los ciudadanos particulares. 34 L.P.R.A. Ap. II, R. 12.

En relación con los hechos específicos del caso que hoy ocupa nuestra atención, resulta pertinente enfatizar que la Sección 1063 de la Ley de la Policía Municipal dispone, además, que:

> Las funciones de investigación especializada serán de competencia exclusiva de la Unidades de la Policía Estatal, el Departamento de Justicia u otras agencias y el Gobierno federal. Disponiéndose, que bajo ningún concepto la Policía Municipal podrá crear unidades de agentes encubiertos para el desempeño de los deberes y obligaciones que este capítulo le impone. Los poderes y facultades adjudicados a la Policía Municipal no restringen los poderes y obligaciones de la Policía de Puerto Rico, por lo que en casos de conflicto de jurisdicción o competencia, siempre prevalecerá la Policía Estatal. (Énfasis suplido.)

Por otro lado, y en relación con patrullajes preventivos, la referida Ley dispone que los miembros de la Policía Municipal tendrán el poder y responsabilidad de "establecer, en coordinación con la Policía Estatal, un servicio de patrullaje preventivo." 21 L.P.R.A. sec. 1066(e). (Subrayado nuestro.)

II

No tenemos duda alguna sobre el hecho de que el Tribunal de Circuito de Apelaciones erró al ordenar la supresión de la evidencia ocupada en el presente caso, razón por la cual procede decretar la revocación de la sentencia a esos efectos emitida por el referido foro apelativo intermedio.

Como surge de la relación de los hechos, el fundamento utilizado por el Tribunal de Circuito en apoyo de su errónea determinación fue a los efectos de que la actuación o conducta observada por el guardia municipal Lugo Vázquez --al actuar, alegadamente, como "agente encubierto" y al llevar a cabo una ronda preventiva sin que la misma hubiese sido coordinada antes con la Policía de Puerto Rico-- infringió dos disposiciones de la Ley Orgánica de la Policía Municipal, a saber, las antes transcritas Secciones 1063 y 1066(e) de la referida Ley.

¿Actuó el guardia municipal Lugo Vázquez, el día 26 de agosto de 2000, como un "agente encubierto" por el mero hecho de vestir de civil? Contestamos en la negativa.

Un "agente encubierto", tradicionalmente, es un policía o funcionario que se infiltra en organizaciones o grupos de personas que operan ilegalmente en el clandestinaje, con el propósito de poder llevar a éstos ante el sistema de justicia de nuestro País para que respondan por sus actividades ilegales, lo cual logra hacer el agente ganándose la confianza de estas personas, haciéndoles creer que es uno de ellos, proceso que, de ordinario, toma al agente un considerable período de tiempo.

A nuestra manera de ver las cosas, el mero hecho de que el día de los hechos el guardia municipal Lugo Vázquez, en lugar de llevar puesto su uniforme, vistiera de civil no convirtió a éste, *ipso facto*, en un "agente encubierto".

De todas formas, lo que la antes citada Sección 1063 de la Ley de la Policía Municipal prohíbe es que estos cuerpos creen

"...unidades de agentes encubiertos para el desempeño de los deberes y obligaciones..." que dicha Ley le impone. (Énfasis suplido.) Esa ciertamente no es la situación del caso de autos.

Resulta igualmente errónea, por otro lado, la determinación del Tribunal de Circuito respecto a que la conducta del guardia municipal Lugo Vázquez infringió las disposiciones de la Sección 1066(e) de la Ley de la Policía Municipal, la cual establece que dichos cuerpos podrán establecer "servicios de patrullaje preventivo" únicamente "en coordinación con la Policía Estatal". Entendió el foro apelativo intermedio que la llamada "ronda preventiva" que realizó Lugo Vázquez en el residencial público violó dicha prohibición ya que no fue realizada en coordinación con la Policía Estatal.

Somos del criterio que dicha disposición de ley obviamente se refiere a programas, servicios o planes de patrullaje a corto, o largo, plazo que haga la policía de determinado municipio en ciertos y determinados sectores del mismo. Ciertamente dicha disposición legal no puede referirse a lo acontecido en el presente caso. Aquí meramente se trata de la acción aislada de un guardia municipal que entendió que era más factible que él pudiera descubrir qué personas eran las responsables de la comisión de varios escalamientos si llevaba a cabo una ronda, o caminata, vestido de civil por el residencial público. Ello no cualifica como un "servicio de patrullaje preventivo" del que habla la Ley.

Resulta procedente señalar que la conclusión a la que llegamos, esto es, de que no procede la supresión de la evidencia ocupada el día de los hechos por el guardia municipal, se sostiene aun cuando consideráramos que la conducta o acción del mencionado guardia municipal violó el "espíritu" de las dos antes mencionadas disposiciones de la Ley Orgánica de la Policía Municipal.

Nuestra jurisprudencia ha sido clara a los efectos de que cuando a un "agente o policía", a quien no le ha sido delegada, o no tiene, la facultad para efectuar arrestos en calidad de "funcionario del orden público", efectúa un arresto, las circunstancias alrededor de las cuales él efectuó el mismo se deben evaluar con el propósito de determinar si dicho arresto procedía al amparo de las disposiciones que regulan el arresto por un ciudadano particular. Pueblo v. Andino Tosas, ante.[4]

La Regla 12 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.12, establece que una persona o ciudadano particular podrá arrestar a otra en las siguientes dos situaciones: (a) por un delito cometido o que se hubiere intentado cometer en su presencia, en cuyo caso, el arresto deberá hacerse inmediatamente; (b) cuando en realidad se hubiere cometido un delito grave ("felony") y dicha persona tuviere motivos fundados para creer que la persona arrestada lo cometió.

---

[4] "En Puerto Rico, los funcionarios públicos sólo pueden realizar arrestos sin orden judicial en aquellas instancias en que la ley les conceda expresamente dicha facultad. De no existir tal facultad, el funcionario no posee mayor poder para el arresto del que tiene cualquier ciudadano particular." Pueblo v. Andino Tosas, ante, a la pág. 656.

Los requisitos exigidos y los criterios que facultan al ciudadano particular a arrestar son mucho más estrictos que los establecidos por la Regla 11. Las diferencias con los parámetros establecidos para el funcionario que arresta por delito cometido en su presencia son evidentes, ya que bajo el Inciso (a) de la Regla 12 se requiere certeza de la comisión de un delito consumado o en grado de tentativa. Olga E. Resumil, Derecho Procesal Penal, ante, sec. 7.12, pág. 180. No se utiliza el criterio de "motivos fundados" para creer que se ha cometido o se intenta cometer un delito en su presencia, sino que "el criterio para arrestar bajo esta situación requiere de la convicción por parte del arrestante de que ha presenciado la comisión de una conducta delictiva." Id. Ciertamente esta disposición es mucho más rigurosa que su equivalente en el caso de un funcionario público que efectúe un arresto sin orden en virtud de la Regla 11. Dora Nevares-Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, San Juan, Instituto para el Desarrollo del Derecho, Inc., 6$^{ta}$ Ed. Rev., 2001.

En el presente caso, y conforme la prueba que desfiló ante el tribunal de instancia, no está en duda, ni se cuestiona, que dicha prueba demuestra que efectivamente se cometió, o se estableció la comisión de, un delito público grave ("felony") en presencia del guardia municipal Lugo Vázquez; razón por la cual éste estaba plenamente facultado para proceder al arresto del recurrido Cruz Calderón, tanto al amparo de las disposiciones pertinentes de la Ley Orgánica de la Policía

Municipal como de las de la Regla 12 de Procedimiento Criminal.[5] Siendo válido el arresto efectuado el día 26 de agosto de 2000 por el guardia municipal Lugo Vázquez, la sustancia controlada por él ocupada como consecuencia del mismo es admisible en evidencia.[6]

En mérito de lo antes expuesto, se expide el auto de certiorari radicado por el recurrido Cruz Calderón y se revoca el dictamen del Tribunal de Circuito de Apelaciones, reinstalándose la resolución emitida por el Tribunal de Primera Instancia, devolviéndose el caso a dicho foro judicial para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LOPEZ
Juez Asociado

---

[5] Tampoco está en duda el hecho de que el Policía Municipal Lugo Vázquez no actuaba el día de los hechos en forma alguna como parte de una unidad de agentes encubiertos, creada por la Policía Municipal de Carolina, lo cual está expresamente prohibido por la Sección 1063 antes transcrita de la Ley de la Policía Municipal.

[6] No discutimos, por inmeritorio, el señalamiento a los efectos de que el testimonio del Guardia Municipal Lugo Vázquez es uno "estereotipado".

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       vs.                     CC-2001-393       CERTIORARI

Hamilton Cruz Calderón

    Acusado-recurrido

**SENTENCIA**

San Juan, Puerto Rico, a 16 de enero de 2002

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto de certiorari radicado y se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones, reinstalándose la resolución emitida por el Tribunal de Primera Instancia, devolviéndose el caso a dicho foro judicial para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina.

                  Carmen E. Cruz Rivera
           Secretaria del Tribunal Supremo Interina